Mr. Justice SWAYNE
delivered the opinion of the court.
The question is, whether it was a condition precedent, that the ship should proceed directly from Melbourne to Calcutta; or, in other words, whether these clauses constitute a warranty, or are merely'-a representation.
“ The construction to be put upon contracts of this sort depends upon the intention of the parties, to be gathered from the language of the individual instrument. Whether particular stipulations are to be considered conditions precedent, or not, must, in all cases, solely depend upon that intention, as it is gathered from the instrument itself.”* “All mercantile contracts ought to be construed' according to their- plain meaning, to men of sense and understanding, and not according to forced and refined constructions, which are intelligible only to lawyers, and scarcely to them.”† “ The rule has been established, by a long series of adjudications in modern times, that the question whether covenants are to be held dependent or independent of each other, is to be determined by the intention and meaning of the parties, as it appears' on the instrument, and by the application of common sense, to each particular case, and to which intention, when once discovered, all technical forms of expression must give' way; and one of the means of discovering, such intention has been laid down with great accuracy by Lord Ellenborough, in the case of Ritchie v. Atkinson,‡ to be this: that when mutual .covenants go to the whole consideration, on both sides, they are mutual conditions, the one precedent to the other; but where the covenants go only to a part, then a remedy lies in the covenant to recover damages for the breach of it, but it is not.a condition precedent."§
*739 Buies have been elaborately laid down, and discussed in many cases, for determining the legal character of covenants, and their relations to each otherbut all the leading authorities concur in sustaining these propositions.
Contracts, where their meaning is not clear, are to be construed in the light of the circumstances surrounding the parties when they were made, and the practical interpretation which they, by their' conduct, have given to the provisions in controversy.*
This charter-party bears date on the 4th day of June, 1858. The vessel was then on her way to Melbourne. The agreed facts warrant the conclusion, that the owner believed confidently that she would reach Melbourne in advance of the mail, which would carry to her master advice of the charter-party. It was also probable that she might engage her freight before the master could receive the advice. On the other hand, it was improbable that she would have discharged her cargo and have left Melbourne before the mail arrived. Hence, no provision was made by the owners for any other contingency than that she should have become engaged. In that event, they were not to be bound;'and the charterers required it to be stipulated, simply, that if not engaged, she should proceed with all possible despatch from Melbourne to Calcutta.
Promptitude in the fulfilment of engagements is the life of commercial success. The state of the market at home and abroad, the solvency of houses, the rates of exchange and of freight, and various other circumstances which go to control the issues of profit or. loss, render it more important in the enterprises of the trader than in any other business. The result of a voyage may depend upon the day the vessel arrives at her port of destination, and the time of her arrival may be controlled by the day of her departure from the port whence she sailed. We cannot forget these considerations in our search for the meaning of this contract. That *740 the parties could have intended that when the vessel left Melbourne she might wander in any direction over the Indian seas, and that whenever and wherever she should receive intelligence of the contract, she might proceed to Calcutta and claim its fulfilment by the charterers, strikes us as incredible. So to hold, we think, would be to make a new contract for the parties, and not to execute the one they have made. We cannot give any other construction to the language, “the ship to proceed from'Melbourne to Calcutta with all possible despatch,” than that she -was to proceed direct from one place to the other, and that to this extent, at least, time was intended to be made of the essence of the contract. We lay out of view the state of things at Calcutta when the vessel arrived there. To allow that to control our conclusion, would be to make the construction of the contract depend, not upon the intention of the parties when it was entered into, but upon the accidents of the future.
We will now advert to the authorities to which our attention has been directed. Tarrabochia v. Hickie, Dimech v. Corlett, Clipsham v. Vertue, and Freeman v. Taylor, are in point for the defendants in error, and seem to sustain the views of their counsel. In these cases it was held, that unless the delay was so great as to frustrate the object of the charterers in making the contract, it was not material to the rights of-the parties. In two of them the delay was produced by the deviation of the vessel from the. direct course to the port where she was to receive her lading.
The authorities relied upon in behalf of the plaintiffs in error are' equally cogent. In Glaholm v. Hays, the language of the cliarter-partjr was, “ the vessel to sail irom England on or before the 4th day of February next.” This was held to be a condition precedent. Chief Justice Tindal said this language imported the same thing as if it had been “ conditioned to sail,” or “warranted to sail on or before such a day.” In Oliver v. Fielden et al., the contract, as set out in the declaration,- was that “ the ship called the Lydia, .... then on the stocks at Quebec, to be launched and ready to receive cargo in- all the month of May, 1848, and guaranteed *741 by the owners to sail in all June, A. D. 1848,” &c.,should be loaded by the factors of the charterers, &c. It was held that the readiness to receive a cargo in all May was a warranty, and that in an action for not loading the vessel, a plea stating that the ship was not ready to receive a cargo “ in all May,” was good on general demurrer. Pollock, Chief Baron, said, “ The stipulation as to the vessel being ready to receive a cargo in May is not mere description, but part of the contract, and forms a condition precedent to the plaintiff’s right to recover.” Crookewit v. Fletcher presented the same point, and was ruled in the same way. In Ollive v. Booker, the vessel was described as “ now at sea, having sailed three weeks ago, or thereabouts.” It was held, that the time at which the vessel sailed was material, and that the statement in the charter-party amounted to a warranty.
The most recent and most important authority brought to our notice is Behn v. Burness. It was agreed by the charter-party, in that case, that the ship then “ in the port of Amsterdam . . . should, with all possible despatch, proceed to Newport, in Monmouthshire;” and there: take in cargo. At-the date of the contract the ship was not at Amsterdam, but at another place sixty-two miles distant from there. Being detained by contrary winds, she did not reach Amsterdam until the 23d of October. She discharged her cargo as speedily as possible, and proceeded direct to Newport, where she arrived on the 1st of December. The defendant refused to load her. ' The plaintiff sued for damages, and the defendant pleaded that the ship was not at Amsterdam at the time of the making of the contract. The Queen’s Bench ruled in favor of the plaintiff, and he recovered. The defendant took the case, by a writ of error, to the Court of Exchequer, and that court reversed the judgment of the Queen’s Bench. The opinion of the reversing court is characterized by force and clearness, and the leading authorities on the subject are examined. The court say: “We feel a difficulty in acceding to the suggestion that appears to have been, to some extent, sanctioned by high authority (see Dimech v. Corlett), that a statement of this kind in a charter-party, which may *742 be regarded as a mere representation, if the object of the charter-party be still practicable, may be construed as a warranty, if that object turns out to be frustrated, because the instrument, it should seem, ought to be construed with reference to the intention of the parties at the time it was madcy irrespective of the events which may afterwards occur.” Referring to Freeman v. Taylor, Tarrabochia v. Hickie, and Dimech v. Corlett, they say: “But the court did not, we apprehend, intend to say that the frustration of the voyage would convert a stipulation into a condition, if it were not originally intended to be one.” They evidently felt embarrassed by the prior adjudications, which take a different view of the subject, and an effort is made to reconcile them with the decision they were- about to pronounce. Here we have ■no such embarrassment, and we think we shall settle wisely the important principles of commercial law involved in this controversy by following the case of Behn v. Burness.
Upon reason, principle, and authority, we are of opinion that the stipulation before us is a condition precedent, and not a mere representation, nor an independent covenant, and that it goes to the entire root of the contract.
Judgment reversed, and the cause remanded for further proceedings, in conformity to this opinion.

 Seegur v. Duthie, 8 Common Bench, N. S., 63.

 Crookewit v. Fletcher, 1 Hurlstone & Norman, 912.

 10 East, 295.

 Stavers v. Curling, 3 Bingham’s New Cases, 355

 Simpson v. Henderson et al., 1 Moody & Malkin (22 English Common. Law), 313; Hasbrook v. Paddock, 1 Barbour S. C. 635; French v. Carhart, 1 Comstock, 105.