GILBERT PORTEOUS et al., Appellants, *v.* FRANCIS W. WILLIAMS et al., Respondents.

A charter-party recited that the steamer chartered was due in New York with a cargo on or about March twenty-fifth. The contract was that the ship " being light, staunch, strong and every way fitted for the voyage, shall, with all convenient speed, after having delivered her outward cargo, * * * sail and proceed in ballast to Charleston, S. C., * * * and there load " with a cargo specified. No deviation of any kind was provided for, or detention, save the necessary delay of unloading. On March twenty-sixth, while on the voyage to New York, the steamer was injured. She reached that port on March thirtieth, and was necessarily taken to the dry dock for repairs, where she remained until the latter part of April. About April first the charterers notified the owners that if the steamer should be delayed and did not reach the designated port in time for a shipment in April they would have to cancel the charter. The charterers thereafter took a new charter-party for the month of May. In an action to recover damages for the refusal to load the steamer under the first charter-party, there was evidence tending to show that the vessel was taken under that charter for a particular shipment or cargo, and that the whole object of the charterers was frustrated by the delay. The plaintiffs were nonsuited. *Held*, error; that if the delay did defeat the object of the charterers in making the contract, performance on their part was excused; and this was a question of fact for the jury, as was also the question as to whether the first charter-party was canceled or superseded by the issuing of the second, in the absence of

an express agreement to that effect; that the usual qualifications in the charter-party of detention by unavoidable accident or perils of navigation, etc., related simply to the voyage to be made for the charterers, not to the condition of the ship while going to the owners' port of discharge, or to any detention made necessary by that condition.

(Submitted May 3, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 7, 1887, which affirmed a judgment in favor of defendants, entered upon an order nonsuiting plaintiffs on trial.

The nature of the action and the material facts are stated in the opinion.

*E. B. Convers* for appellants. If diligence is proved, but delay results from perils and dangers of navigation, the charterers are still bound by their contract. (*Lovell* v. *Davis*, 101 U. S. 541; *Fearing* v. *Cheesman*, 3 Cliff. 91; *Hull* v. *Hurlbut*, Taney's Dec. 589.) "That the ship * * * shall, with all convenient speed, sail and proceed * * * to Charleston," is not a condition precedent, a breach of which would justify a refusal to load, even were a breach established. At most, it could give rise only to a counter-claim for damage from delay, which must have been pleaded as an affirmative defense to be available. (*Tarrabochia* v. *Hickie*, 1 H. &. N. 183, 188; *McAndrew* v. *Chapple*, L. R., 1 C. P. 643, 648; *Dimech* v. *Corlet*, 12 Moore Priv. Council Cas. 199.) The only other ground warranting rescission would be the complete frustration of the mercantile adventure, as contemplated by both parties. (*Hudson* v. *Hill*, 43 L. J. Rep. [C. P.] 273.) The presumption is in favor of seaworthiness. (*Pyman* v. *Von Singen*, 3 Fed. Rep. 803; *Lunt* v. *Boston Marine Ins. Co.*, 6 id. 562; *The Rover*, 33 id. 516, 521.) Where a definite proposal is made, in contemplation of legal consequences, and capable of affecting legal relations, an acceptance of it which is absolute, unqalified, and identical with the terms of the offer, forms a binding contract, consisting in outstanding obligations on both sides. (Anson on Contracts [Am. ed.] 12, 14, 15, 20; Pollock on Contracts [Am. ed.]

31; *Taylor .*v. *Ins. Co.*, 9 How. 390; *Hamilton* v. *Ins. Co.*, 5˙ Pa. St. 339; *Adams* v. *Lindsell*, 1 B. & Ald. 681.), Where the offer contains a condition, or covers two separate matters, a general and unqualified acceptance is held to relate to and include in the contract all matters referred to in the offer. (*Winslow* v. *Moore*, 17 W.k. Dig. 429.) An acceptance once communicated cannot be revoked, as the contract is then made. (*Taylor* v. *Ins. Co.*, 9 How. 390; Anson on Con. 20; Pollock on · Con. 31.) The matter was not open until the terms of the contract were formulated by Card in a written charter-party, because it was agreed the terms were to be same as in prior charter. The contract was, therefore, concluded and capable of definite formulation when Card telegraphed. (Pollock on Con. 31; *Rossiter* v. *Miller*, 3 App. Cas. 1124, 1138, 1139, 1145; *Chinnock* v. *Marchioness of Ely*, 4 De G. J. & S. 645; *The Calabria*, 24 Fed. R. 607, 608.) All Card's acts were within the scope of his ostensible authority, and therefore binding on the defendants. (*Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195.) It cannot be contended that a conclusive election was made by the mere act of plaintiffs' agents, eight months before the action was begun, in notifying Card that they looked to him as principal, in the absence of proof that such intention was ever acted upon, or that the defendants were in any way prejudiced thereby. (Leake's Dig. 503, 504; *Tuthill* v. *Wilson*, 90 N. Y. 428.) Unless the principal has been in some way prejudiced or has settled with the agent, nothing short of suing one to judgment will constitute an election operating as a legal bar to a suit against the other. (*Curtis* v. *Williamson*, L. R., 10 Q. B. 57; *Priestly* v. *Fernie*, 3 H. & C. 977; *Cobb* v. *Knapp*, 71 N. Y. 348; *Knapp* v. *Simon*, 6 Civ. Pro. R. 1; Chitty on Con. [11th Am. ed.] 309; *Tuthill* v. ·*Wilson*, 90 N. Y. 423, 428, 429; *Mattlage* v. *Poole*, 15 Hun, 556, 558; *Nason* v. *Cockroft*, 3 Duer, 366, 369.)

*Lemuel H. Arnold* for respondents. Until that charter-party was received by Seager Bros., and its contents known

to them, and until it was accepted by them on the terms on which it was delivered, neither Seager Bros. nor Card were bound by what had passed between them. (*Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *Beach* v. *R. R. Co.*, 37 id. 457; *Renard* v. *Sampson*, 12 id. 561.) The acceptance of this second charter-party, with the conditions annexed of cancellation of the first charter-party, merged all previous negotiations, and Seager Bros. having executed it without any reservation, discharged whoever was liable on the first charter-party from its obligations to them. (*Lattimore* v. *Hansen*, 14 Johns. 329; *Green* v. *Green*, 9 Cow. 50; *Dearborn* v. *Cross*, 7 id. 48; *Holmes* v. *Doane*, 9 Cush. 135; *Monroe* v. *Perkins*, 9 Pick. 298; *Blood* v. *Enos*, 12 Vt. 625.) Having notice of the extent of Card's authority, the appellants cannot hold the respondents liable for Card's acts beyond the limits of that authority. (*Brush* v. *Cole*, 28 N. Y. 261; *Robertson* v. *Ketchum*, 11 Barb. 652; *Lawrence* v. *Gallagher*, 42 Supr. Ct. 388.) Knowing, therefore, that the respondents would recharter only on condition that the first charter was canceled, and Card having offered to assume all liability under the first charter, the appellants, by accepting Card's offer and rechartering to the respondents, substituted Card in their place as the party who was liable to them, and thereby discharged the respondents from liability to them. (Ralston on Discharge of Contracts, 2–8; *Billings* v. *Robinson*, 94 N. Y. 415.) After discovery of the principal, the creditor elects to hold the agent liable and acts accordingly in a manner to affect the principal, he will be precluded from afterwards charging the principal. (Leake's Digest, 503, 504; *Tuthill* v. *Wilson*, 90 N. Y. 423, 428; *Mattlage* v. *Poole*, 15 Hun, 556; *Coleman* v. *Bank of Elmira*, 53 N. Y. 393.) The second charter-party is in evidence for all the purposes of the case, although offered by the appellants for a particular purpose. (*Mills* v. *Loomis*, 75 N. Y. 288.)

Danforth, J. The plaintiffs sued to recover $1,452.66, that sum being, as alleged, their loss in consequence of the refusal

of the defendants to load the steamship "Limosa," under a charter-party dated at Charleston, S. C., March 20, 1882. The plaintiff was nonsuited. Among other grounds presented by the defendants to sustain that ruling is :

*First.* That the charter-party was canceled. Upon that question there is, as it seems to us, room for a difference of opinion. The charter-party recites that the vessel " is due at New York with a cargo on or about 25th inst., meaning March 25, 1882 ; that the said ship being light, staunch, strong and every way fitted for the voyage, shall, with all convenient speed (after having delivered her outward cargo, which she is at liberty to take to New York for owner's benefit), sail and proceed in ballast to Charleston, S. C., or Coosaw River, S. C., charterer's option, and there load (always afloat) from the factors of said merchants a full and complete cargo of phosphate rock." It appears that on the twenty-sixth of March, and while on the voyage to New York, the steamer was seriously injured, and when she reached port was necessarily taken to the dry-dock for repairs. She remained there until the latter part of April. In the meantime, as early as April first, the defendants notified the plaintiffs that if she should be delayed in New York and did not reach Charleston in time to make a shipment in April, they " would have to throw her up " or cancel the charter. There was correspondence in regard to it and afterwards they took a new charter party, dated April twenty-fifth, for the month of May.

The steamer was then in New York, but immediately started for Charleston, where she was to be loaded. The letters which passed between the agents of the parties are susceptible of two constructions, and we do not think it can be said, as matter of law, that the parties agreed that the first charter, party should be canceled or superseded.

*Second.* There is another question. If the parties did not agree that the first charter party should be canceled, was the undertaking on the plaintiff's part performed or was there such failure and inability to perform as released the defend-

ants and permitted them to refuse the vessel when tendered? The express agreement of the owner required the ship after discharging the cargo then on board, with "all convenient speed," to sail and proceed to the port of the charterer. No deviation was provided for, nor detention for any cause save the necessary delay of unloading. The qualification of detention by unavoidable accident, or perils of navigation, or other cause has no application to that term of the agreement. Such qualification relates to the voyage to be made for the charterer, and not to the condition of the ship while going to the owner's port of discharge, nor to any detention made necessary by that condition. The evidence would, in one view, warrant the finding that the vessel was taken under the first charter for a particular shipment or cargo, and that the whole object of the charterer in engaging the ship was frustrated by the delay of the owner in bringing her to Charleston.

In *McAndrews* v. *Chappel* (1 Com. Pl., L. R. 643) the charter-party contained a clause that the ship should "with all convenient speed (on being ready) proceed to the charterers and there load, and notwithstanding this qualification it was thought that if the delay prevented the cargo from being shipped, which cargo was the object for which the ship was chartered, performance on the charterer's part might be excused, although that question was not decided. *In Lowber* v. *Bangs* (2 Wall. 728), a somewhat similar provision was regarded as a condition precedent, but, whether one or the other case is followed, we think it quite clear that if the delay of the owner did truly defeat the object of the charterers in making the agreement, performance on their part would be excused and they would not be liable. We cannot say, however, that it does so appear as matter of law.

Some other propositions are submitted by the respondent, but none which, in the present aspect of the case, would permit it to be taken from the jury, and it should have been sent to them.

The judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.