MURRAY v. AIKEN MINING, &c., COMPANY.

1. SURETY—ISSUES.—Under the issue, whether a surety company was liable as surety on the bond of the treasurer of corporation A for his fraudulent misappropriation of the proceeds of stock in corporation B sold by such treasurer, and alleged by the assignee of the bond to be the property of A, the Circuit Judge did not err in ruling that "the solution of the question, to whom did that stock belong, would solve the question, to whom did that money belong."

2. FINDINGS OF FACT—CORPORATIONS.—The president and the treasurer of corporation A having purchased stock in corporation B, and taken the certificates of stock to themselves as "trustees for the stockholders of" the corporation A, upon whose books the purchase money was entered, and whose money was used in developing the property of corporation B, and the treasurer having afterwards sold this stock as the stock of corporation A, and received the proceeds of sale, *held*—overruling the Circuit Judge—that the stock so sold and the proceeds of its sale were the property of corporation A, notwithstanding the treasurer's testimony to the contrary.

3. RECEIPT—EVIDENCE.—A receipt may be explained, particularly so where the intent of the maker is a question at issue. But the receipt in this case was held to mean that which its terms declared, in the light of the subsequent conduct and agreements of the maker.

4. CORPORATIONS—STOCKHOLDERS.—In a Court of Equity—if not at all times—a certificate of stock held in trust "for the stockholders" of a corporation, and shown by the testimony to have been intended for the corporation itself, will be treated as the property of such corporation.

5. EVIDENCE—CIVIL ACTION—BREACH OF TRUST.—In order to hold a surety liable on his bond for his principal's breach of trust with fraudulent intent, the principal's guilt of this crime must be established by the same degree of proof that would be required to convict him under an indictment for this offence, which, by statute, is larceny.

6. IBID.—FINDING OF FACT—SURETY.—And this court being satisfied beyond all reasonable doubt that the stock so sold was the property of the corporation of which the principal on the bond was treasurer, and that as such

officer he misappropriated the proceeds of such sale with a fraudulent intent, he was declared to be guilty, and his surety liable for his default.

7. SURETY—SET-OFF—ASSIGNEE.—A surety should be held liable for the default of the principal under his bond only for so much as remains after deducting from the principal's default the amount of the indebtedness by the creditor to the surety. And the assignee of the creditor has no higher right than his assignor.

8. CORPORATION—ESTOPPEL.—A corporation is liable for money paid by its treasurer under an honest belief that it was a just demand, and where the fund realized by the expenditure was claimed by the corporation.

9. IBID.—IBID.—Where funds of a corporation were illegally diverted, but not with a fraudulent intent, to the development of a second corporation, and the fruits of this breach of trust have been received by the first corporation, neither it nor its assignee can afterwards be heard to object.

Before NORTON, J., Aiken, July, 1891.

The Circuit decree, omitting its statement of the pleadings copied into the opinions, and some matters immaterial on the appeal, was as follows:

The case was heard by me upon the oral and documentary testimony taken and reported by the master, the case having been referred to him for such purpose. There was no dispute made before me as to the amounts of the claims of the various creditors, who proved their demands before the master, except as to two items in the claim of the plaintiff. I find that the claim of the plaintiff (Murray) against the original defendant is two thousand and sixty-five and 24–100 dollars, which is to be offset against the claim of three thousand and thirty dollars, which is hereinafter found to be due the original defendant by the plaintiff, leaving the plaintiff in debt to the defendant in the sum of nine hundred and sixty-four and 76–100 dollars, for which amount judgment is ordered against him personally, in favor of the defendant, the Aiken Mining and Porcelain Manufacturing Company, and upon said claim of three thousand and thirty dollars, for the reasons hereinafter given, judgment is ordered against the defendant, P. A. Emanuel, for the sum of nine hundred and sixty-four and 76–100 dollars, in favor of the defendant, the Aiken Mining and Porcelain Manufacturing Company.

The main contest in the case is between the Bank of New York, N. B. A., which is the assignee of the original defendant, of the bond, given it by the Fidelity and Casualty Company of New York, for the faithful performance of the duties of secretary and treasurer by the plaintiff, upon the conditions as therein specified. The first breach charged is, that plaintiff, as such treasurer, received six thousand dollars from T. G. Lamar & Co., as the proceeds of the sale of twenty-five shares of the stock of the Nonpareil Kaolin Company, and that he fraudulently appropriated the same to his own use, and in this committed larceny, and that hence the Security Company is responsible to the Bank of New York for five thousand dollars, the penalty of the bond. The solution of the question, to whom did that stock belong? would solve the question, to whom did that money belong? If it did not belong to the original defendant as a corporation, as such, and was not received by plaintiff as its treasurer, then the Security Company would not be responsible for its reception or appropriation, for it simply guaranteed plaintiff's conduct as treasurer of said corporation.

Plaintiff and defendant Emanuel were the principal promoters of the Aiken Mining and Porcelain Manufacturing Company— the one being the secretary and treasurer, and the other the president thereof, and together owning or controlling the bulk of its stock. . Having found a kaolin mine, the developing and working of which in connection with the said company's property they believed would be profitable, they bought a half interest in it, Emanuel paying for it with his individual money, and plaintiff afterwards paying his share therein by advances which he made under an agreement entered into at the time of the purchase, between Emanuel and himself and the other coworkers, Walker and Miller, that plaintiff and Emanuel would advance all moneys needed for the development of the scheme, and they proceeded to open it, using their own funds, until their private resources gave out, in the development of it. Then, having no other funds, they used money of the original defendant. Miller and Walker would not sell any interest to said company, and were averse to forming a corporation, but being finally persuaded to do so, the Nonpareil Kaolin Company

was formed, with Emanuel as president, and plaintiff as secretary and treasurer. The report of the commissioners appointed to take stock is signed by Emanuel, Murray, Walker, and Miller, and reported to the secretary of state that they are each the owner of twelve and one-half shares of stock. As such officers they issued their half of the stock to themselves, as "trustees for the stockholders of the Aiken Mining and Porcelain Manufacturing Company."

The inability as well as the indisposition of persons to analyze and correctly state the reasons which prompt them to action, being considered in connection with the testimony relating thereto, I conclude that plaintiff and Emanuel knew they were unauthorized in law to use the funds of the original defendant to work the Nonpareil mine; but owning or controlling the bulk of the stock of said company, they thought they had a moral right, provided they secured the stockholders of that company against loss, by reason of their illegal actions; and plaintiff also thought that as Emanuel owned a very few shares in his own name, while he owned a hundred and fifty shares, very near a controlling interest, that it would be for his individual protection, and for these reasons the Nonpareil stock was issued to them as it was. From all the facts and circumstances surrounding the transaction, I find, as matter of fact, that the twenty-five shares of stock of the Nonpareil Kaolin Company belonged to the plaintiff and Emanuel, and not to the Aiken Mining and Porcelain Manufacturing Company, and that the six thousand dollars arising from the sale thereof also belonged to them.

It is claimed that the plaintiff, as secretary and treasurer, kept the books of the original defendant corporation, and is bound by certain entries therein, purporting to give the history of a sale of the stock in question from Emanuel to the corporation. There is no direct transfer of the stock from either Murray and Emanuel personally, or from them as trustees, to the corporation; and even if Mr. Townsend, who kept the books, had been designated so to do by plaintiff, it is clear, from his testimony and that of plaintiff, that the plaintiff knew nothing of the entries in question, and took no part in the

making of them. It should be noted that the entries in question were not made in course of ordinary book-keeping, and were made by the direction of Mr. Emanuel, and without knowledge of plaintiffs. As matter of fact, I find that plaintiff is not estopped by such entries so made upon the books of said company as to the ownership of said stock.

It is further claimed that plaintiff is estopped by his receipt to Lamar & Co. for six thousand dollars, which he signed as treasurer, from showing to whom it actually belonged at the time of the sale, and that by said receipt he is bound to the fact that it belonged to the Aiken Mining and Porcelain Manufacturing Company. All receipts can be explained. The transaction was not with the corporation, or any one for it, and it was not thereby induced to change its condition or action by reason of such act; and, as a matter of law and fact, I find that plaintiff is not so estopped, nor is the Security Company estopped. Big. Estop., 324, 345, and 544. Nor is plaintiff, if he promised to pay the six thousand dollars to the corporation, estopped from showing to whom it belonged by such promise, for the reason that it was made long after the sale, and after the use of the money by him, and when the corporation knew all the facts thereof.

Again, plaintiff and Emanuel bought the half interest in the land of the Hill & Johnson Company, from which the stock in question sprung, for themselves, but subsequently, after the Nonpareil Kaolin Company was formed, had their twenty-five shares of that stock issued to themselves, as trustees of the stockholders of the Aiken Mining and Porcelain Manufacturing Company. This designation of the stockholders certainly could not put the stock in the corporation. The stockholders are one set of individuals, the corporation is another existence. The corporate body is separate and distinct in its rights and obligations from the individuals who compose it, and the individual corporator may sue his corporation, and the corporation may sue a corporator. Boone Corp., 354.

It follows, and I so find, that the declaration of trust for the stockholders of the corporation was not a declaration of trust in favor of the corporation, and, consequently, the corporation

was not entitled, through its treasurer, to receive the six thousand dollars, but Murray and Emanuel were entitled to receive it, and bound to account to the stockholders individually for such part of it as the facts, on investigation, would show they were entitled to; and this being the case, it further follows, as the money received by Murray was not the money of the corporation, the defendant, the Fidelity and Casualty Company of New York, which simply guaranteed his conduct as secretary and treasurer of such corporation, is not responsible for his reception and use of said money.

Again, by its bond given to the original defendant, and now held by the defendant, the Bank of New York, the defendant, the Fidelity and Casualty Company, undertook to "make good and reimburse such pecuniary loss, if any, by the employer, by reason of fraud or dishonesty of the employed in connection with the duties referred to, amounting to embezzlement or larceny." In other words, it guaranteed the conduct of Murray to the extent, not simply of fraud or dishonesty, but fraud or dishonesty amounting to embezzlement or larceny. This was the bond accepted by the original defendant, and in their shoes, with no higher rights or equities, stand the Bank of New York, as assignees. To hold the Security Company responsible on this bond, Murray must be guilty, not only of a breach of trust, but larceny.

We have no embezzlement statute in this State. *State* v. *Shirer*, 20 S. C., 408. Under section 2493 of the General Statutes of this State, it is provided: "That any person committing a breach of trust, with fraudulent intention, shall be held guilty of larceny." Under our cases, decided under this statute, to wit, *State* v. *Shirer*, *supra*, and *State* v. *Butler*, 21 S. C., 353, it is held, that the fraudulent intent spoken of in the statute is the same as the *animus furandi* in larceny. Besides this, a crime being charged, though this be a civil action, the proof must go beyond a reasonable doubt. *Burckhalter* v. *Coward*, 16 S. C., 440.

As to the six thousand dollars, I find, as matter of law and fact, that the plaintiff, as treasurer of the original defendant corporation, was not guilty of a breach of trust, with fraudu-

lent intention, or larceny or embezzlement, and hence, that his surety, the defendant, the Fidelity and Casualty Company of New York, is not responsible for the reception by said plaintiff for any part of said six thousand dollars, and stands acquitted of the same.

As to the breach alleged by the Bank of New York against the bond given by the Security Company as aforesaid, based upon the alleged claim, that Emanuel and Murray, the president and secretary and treasurer of the Aiken Mining and Porcelain Manufacturing Company, misappropriated three thousand and thirty dollars of the funds of the said company, by advancing the same to develop the Nonpareil mine, and that thereby they committed a breach of trust with fraudulent intention, I find, from the facts of this case, that as to said funds, they both committed a breach of trust, in that they had no authority from the corporation to make such disbursements, and for such reason they are liable to the corporation for said money so spent, and I have so adjudged herein; but, as matter of fact, I am fully convinced, and so find, that neither they, nor either of them, had any criminal intention in said transaction, and they stand acquitted thereof. The defendant Emanuel, the president of both companies, and the representative of nearly all the stock not owned by the plaintiff, was an active participant in procuring the funds for the purpose aforesaid, and actually disbursing said sum as a loan to the Nonpareil Kaolin Company, which disbursement all the evidence shows they both considered to be greatly to the interest of the Aiken Mining and Porcelain Manufacturing Company, and made chiefly to promote that interest, and not to deprive said company of the money, but, as they thought, it would be returned; and in this connection, it must be borne in mind that they thought the Aiken Company would have the handling of the Nonpareil clay, and thus derive an advantage, not only by its sale, but be enabled to mix it with their product, which, it seems from the testimony, was much desired by the president.

As to the defence set up by the Fidelity and Casualty Company, that the application for their bond was a part and parcel thereof, and that the statement therein, that moneys would

come to the hands of the treasurer, simply from the sales of clay, and that as the six thousand came from the sale of stock, and not clay, it could amount to a breach of the bond, I find that said defence is untenable. I am satisfied, under the authorities, that the statement contained in the application for the bond is not a warranty, but simply a representation, and as there was no wilful, fraudulent representation, the defence cannot prevail.

Wherefore, it is ordered, adjudged, and decreed: First. That the claim of the defendant, the Bank of New York, National Banking Association, as assignee of the Aiken Mining and Porcelain Manufacturing Company, against the defendant, the Fidelity and Casualty Company of New York, for a breach of its bond, described in the pleadings, and given as a guarantee for the conduct of Joseph E. Murray, as secretary and treasurer of its said assignor, upon the specifications made by said Bank of New York, that he, as such treasurer, committed a breach of trust, with fraudulent intention or larceny of the funds, known in the pleadings as the six thousand dollar fund and the three thousand and thirty dollar fund, be, and the same is hereby, denied and disallowed, with the costs of the said defendant, the Fidelity and Casualty Company of New York, to be paid by the defendant, the Bank of New York, N. B. A. Second. That the defendant, the Aiken Mining and Porcelain Manufacturing Company, have judgment against the plaintiff, Joseph E. Murray, for the sum of nine hundred and sixty-four and 76–100 dollars, &c.

From this decree the Bank of New York appealed.

*Mr. Samuel Lord,* for appellant.

*Messrs. Henderson Bros.,* contra.

November 7, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. For the purposes of a statement of the facts out of which this controversy arose, we adopt the statement thereof by the presiding judge on the Circuit:

"This action was commenced on the 11th day of February, 1889, by service of summons and complaint on the first named defendant. An injunction was granted, and a receiver appointed. Subsequently P. A. Emanuel, the Bank of New York, N. B. A., and the Fidelity and Casualty Company of New York, were made parties. The complaint alleges that the defendant company is indebted to the plaintiff and to others, is insolvent, and has ceased to operate its property, which is, therefore, unproductive; that a meeting had been called for the purpose, among other things, of authorizing a mortgage of its property, and demands an injunction, the appointment of a receiver, and the sale of the corporation property and franchise. The answer of the original defendant company substantially admitted all the allegations of the complaint, except the indebtedness to the plaintiff, but alleges that its insolvency was caused by the wrongful appropriation by plaintiff of six thousand dollars of its funds, minutely detailing the manner thereof, and prays that its creditors may be called in, an accounting be had among the stockholders, and that plaintiff be required to pay over said six thousand dollars.

"The answers of P. A. Emanuel and the Bank of New York allege that the six thousand dollars mentioned in the answer of the original defendant were received by the plaintiff as treasurer thereof (as treasurer of the Aiken Mining and Porcelain Manufacturing Company), and was appropriated by him in such a way as to constitute a breach of trust with fraudulent intent, to wit, larceny; and that the defendant, the Fidelity and Casualty Company, had entered into bond to make good to the original defendant, to the extent of five thousand dollars, any such misappropriation on certain other conditions which had been complied with; that said bond had been assigned to said bank as collateral to a debt. The answer of the bank also includes an alleged misappropriation of three thousand and thirty dollars by the plaintiff as treasurer, by using it to develop the Nonpareil mine, and judgment is asked against the Security Company for the entire penalty of their bond, five thousand dollars, or enough thereof to satisfy said debt of said bank, and the balance to the general creditors of the original defendant.

The answer of the Fidelity and Casualty Company denies that the six thousand mentioned in the answers was the property of the original defendant, or received by the plaintiff as its secretary and treasurer, admits the execution of the bond, but alleges it was obtained on the false and fraudulent representation that plaintiff, as treasurer, could only handle money from sale of clays, while the alleged breach is the misappropriation of money from another source, and that the bond is, therefore, void. Plaintiff replies, that he and Emanuel were the owners of the property, to wit, the Nonpareil stock, for which he received the said six thousand dollars, and that he received it for them as co-owners, and not as treasurer of the original defendant; denies that the cause of the insolvency of the company was caused by his act, or that he has failed to account for any moneys received as such treasurer."

The cause came on to be heard by his honor, Judge Norton, at Aiken, on the oral and documentary testimony taken by the master in the cause, and, on the 23d July, 1891, he filed his decree. From this decree the Bank of New York, N. B. A., alone appealed, on the following grounds:

1. Because the court erred in holding that Murray, when sued for money in his hands as treasurer, could set off a debt due to him for money paid to a corporation without its order.

2. Because it erred in allowing Murray to set off against his debt to the company, payments made to Bryant and Kleckley, who were not creditors of the Aiken Mining and Porcelain Manufacturing Company.

3. Because it erred in holding that the twenty-five shares of the Nonpareil Kaolin Company, standing in the name of Emanuel and Murray, as "trustees for the stockholders of the Aiken Mining and Porcelain Manufacturing Company," belonged to the trustees, and not to the Aiken Mining and Porcelain Manufacturing Company, and that the six thousand dollars arising from the sale of said stock also belonged to said trustees, and not to the said company.

4. Because it should have found that the 12½ shares subscribed for by Emanuel, and the proceeds thereof, belonged to the Aiken Mining and Porcelain Manufacturing Company.

5. Because it should have found that said twenty-five shares of stock, if they did not belong to the Aiken Mining and Porcelain Manufacturing Company absolutely, were pledged to said company, to indemnify it against any loss that it might sustain by reason of the treasurer's using the corporate funds to develop the mines of the Nonpareil Kaolin Company.

6. Because it erred in holding that the declaration of trust in the certificate "was not intended to indemnify the corporation whose funds the treasurer determined to embezzle, but was intended to indemnify the individual stockholders, and chiefly to indemnify Murray himself, against the consequences of his contemplated misconduct."

7. Because it should have held that, whether said stock belonged to said company, or was pledged to it, the Aiken Company was entitled to receive the proceeds of the stock when sold; that the receipt of such proceeds by Murray was within the scope and in the line of his official duty as treasurer, and that his subsequent conversion of the funds so received was a breach of trust, with fraudulent intent, for which the Fidelity and Casualty Company was liable under the terms of its guarantee.

8. Because the court erred in acquitting Murray of a fraudulent intent, while finding that he had committed a breach of trust, in using the corporate funds without authority in developing the Kaolin Company, and should have found that the Fidelity and Casualty Company was liable for the three thousand dollars of the corporate funds so embezzled by him.

9. Because it erred in holding that Murray had paid his share of the purchase money of the land bought from the Hill & Johnson Company, by advances which he made to the Kaolin Company under the agreement entered into, at the time of the purchase, between Emanuel, Murray, and the other co-owners.

The respondent served this notice: "Please to take notice that upon the appeal to the Supreme Court herein, instituted by you, we will contend before said court, that the judgment of the Circuit Judge, wherein he held that the defendant, the Fidelity and Casualty Company of New York, was not responsible on its bond for the conduct of the plaintiff for the fund of

three thousand and thirty dollars, should be sustained and affirmed, not only for the reasons given by the Circuit Judge, but for the additional reason that no notice or demand, either in writing or otherwise, as to the alleged default, was given to the said company, as required by the expressed condition of its bond."

The appellant lays too much stress upon that expression in the decree of the Circuit Judge, where it is stated: "The solution of the question, to whom did that stock belong? would solve the question, to whom did that money belong?" for, unquestionably, it was the underlying question in the controversy between the appellant and respondent in the case at bar. If Murray did not hold that money as treasurer of the Aiken Mining and Porcelain Manufacturing Company, he could not be guilty of a breach of trust with fraudulent intent, so far as these parties were concerned, when he applied it to his own purposes; and if the Aiken Mining and Porcelain Manufacturing Company did not own those twenty-five shares of stock in the Nonpareil Kaolin Company, when such twenty-five shares were sold and the $6,000 paid as the price therefor, the money was not their property. The testimony here was directed to the proof of their ownership of this stock and of the money for which it was sold. There was no question here suggested that such Aiken Mining and Porcelain Manufacturing Company held that stock, or were entitled to its proceeds when sold, as bailees. They were obliged, under these issues, to be the owners, in law or in equity, of that stock, to be the owners of that money. This was the charge, under the pleadings and the testimony here, that Murray had to meet, and the decision of this issue fixed the liability, or not, of the respondent here, under the bond they gave to protect the Aiken Mining and Porcelain Manufacturing Company against the default of Murray, their treasurer. Recognizing, therefore, the use of this language, here complained of by the Circuit Judge as so restricted in its application, we are unable to perceive the error attributed to him therefor.

Such virtue being attached to the solution of the questions of the ownership of the twenty-five shares in the Nonpareil

Kaolin Company, and of the six thousand dollars received for the sale of it, and as we have assented to the propriety of such a solution of those questions as underlying this controversy, let us devote some pains in their consideration. It seems that in the year 1887 the State of South Carolina incorporated certain individuals as the Aiken Mining and Porcelain Manufacturing Company; that the defendant, P. A. Emanuel, was elected president, and the plaintiff, Joseph E. Murray, was elected secretary and treasurer of such corporation. A large majority of the capital stock of this corporation was owned or controlled by these two officers. The business of the company was, in fact, confined to mining for kaolin on a tract of land in Aiken County that had been bought for that purpose. These two officers soon discovered that the kaolin deposit on the lands in question was defective, and that to obtain ready sale on the market, it would be necessary to mix with it some kaolin of a higher or better grade, and, as prudent men, they began to look out for such kaolin deposits on the lands of others.

Early in the year 1888, Joseph E. Murray learned that a rich deposit of kaolin had been discovered on the lands owned by the Hill and Johnson Manufacturing Company, in Aiken County, and that two of his friends, George O. Walker and W. W. Miller, had obtained the control of the same. This information was conveyed by Murray to Emanuel. They sought out Walker and Miller for the purpose of obtaining an interest with them. Murray and Emanuel proposed to Walker and Miller to go into the Aiken Mining and Porcelain Company with their property, but this proposition was declined. Finally, the firm, Walker, Miller, Murray, and Emanuel, bought from the Hill and Johnson Manufacturing Company the land on which the kaolin mine was located. These four became incorporated, under the laws of the State, as the Nonpareil Kaolin Company, with a capital stock of $5,000, in which stock each had 12½ shares, at $100 per share. The certificates for such stock were issued to George O. Walker, for 12½ shares; to W. W. Miller, 12½ shares; and to P. A. Emanuel and Joseph E. Murray, as trustees of the stockholders of the Aiken Min-

ing and Porcelain Manufacturing Company, for the remaining twenty-five shares.   The Nonpareil Kaolin Company was incorporated in May, 1888; Emanuel was elected president of that corporation, and Murray became its secretary and treasurer.

At the time the minds of the said Walker, Miller, Murray, and Emanuel met in agreement, in April, 1888, it was agreed that Murray and Emanuel should furnish the money essential to the development of the Nonpareil Kaolin Company.   The only money paid by the parties, Walker, Miller, Murray, and Emanuel, to the Hill and Johnson Manufacturing Company, for the property that afterwards formed the basis of the Nonpareil Kaolin Company, was $600, paid by Emanuel.   The testimony of Emanuel and Murray, while agreeing as to the reason existing and controlling them in not taking the twenty-five shares in the Nonpareil Kaolin Company in the name of the Aiken Mining and Porcelain Manufacturing Company, was, that they feared such step would be illegal, because of the inability in law of one corporation, as such, taking stock in another distinct corporation; yet these two parties differ somewhat in their testimony as to their conduct afterwards.   Emanuel says that the property was purchased for the Aiken Mining, &c., Company, and to enhance its value, and that it was because of this fact that the stock issued to himself and Murray, was taken in their names as trustees for the stockholders of the Aiken Mining, &c., Company.   Further, that he had the money, $600, that he paid for the property, and the ownership of such stock, entered on the books of the Aiken Mining, &c., Company on the 11th June, 1888; and that all the money used in the development of the Nonpareil Kaolin Company was furnished by the Aiken Mining, &c., Company, and duly entered upon their books.   Murray says in his testimony, in relation to these transactions, that he and Emanuel never made the agreement that the property purchased by himself, Emanuel, Walker, and Miller, from the Hill and Johnson Manufacturing Company, so far as his and Emanuel's shares therein were concerned, were really for the Aiken Mining, &c., Company.

Here the two flatly contradict each other.   Murray admits

60—37

going to Emanuel's house to set on foot the purchase; and admits that he and Emanuel tried to prevail upon Walker and Miller to bring the property into the Aiken Mining, &c., Company. He also denies that the twenty-five shares of stock in the Nonpareil Kaolin Company were taken in his and Emanuel's name as trustees for the stockholders of the Aiken Mining, &c., Company, but really for that corporation; on the contrary, he says the stock was taken for the protection of himself and Emanuel, as officers of the Aiken Mining, &c., Company, to protect themselves against any personal liability for using the money borrowed of the Bank of New York, N. B. A., for the latter company in the development of the Nonpareil Kaolin Company. He also scouts the entries in the books of the Aiken Mining, &c., Company on these points, asserting that he never authorized them to be placed there as secretary and treasurer, never read them, and did not know of any such entries. We are satisfied that all those contradictory statements by Murray are an afterthought, to screen himself from the consequences of his own bad conduct. We are convinced that Murray and Emanuel, in their anxiety to develop their large interests in the Aiken Mining and Porcelain Manufacturing Company, sought this interest in the property that was bought from the Hill and Johnson Manufacturing Company for that purpose, and that the only reason the name of the Aiken Mining, &c., Company was not used as a stockholder, or rather joint owner, as it was at first, was because Walker and Miller refused to go into that company, and that the meaning they attached to the words, "as trustees for the stockholders of the Aiken Mining and Porcelain Manufacturing Company," added to their names in the certificates issued to them for twenty-five shares in the Nonpareil Kaolin Company, was that such shares belonged to the Aiken Mining, &c., Company.

Consider what follows in the history of these transactions. Here is the letter Murray writes in August, 1888, in order to procure a sale of this stock:

"AUGUST 11th, —8.

"*Messrs. G. O. Walker and W. W. Miller*—Gentlemen: In place of the hasty letter written to you by myself, and as trustee in

behalf of the Aiken Mining and Porcelain Manufacturing Company, I make for said company, under instructions of its president, the following proposition to you: We will sell you our twenty-five shares of the capital stock of the Nonpareil Kaolin Company, the same being all our right, title, and interest in said company, for the sum of six thousand dollars cash. This proposition is made with the understanding that the Nonpareil Kaolin Company shall pay its own debts, except those now due and posted upon its books, and agreed to by its president, P. A. Emanuel. It is further understood that the Nonpareil Kaolin Company shall carry out certain contracts made by its president, P. A. Emanuel, with Mr. J. F. Ferris, for the delivery f. o. b. cars at Langley, S. C., of nonpareil clays at $5.25 per ton, as ordered by him between this time and September, 1889.

"Yours truly,          J. E. MURRAY, Trustee, &c."

Three days after this date, Murray enters into the following agreement:                        "AUGUST 14th, 1888.

"*Memorandum of Agreement.*"

"The Aiken Mining and Porcelain Manufacturing Company agrees to sell to T. G. Lamar & Co. all their stock in the Nonpareil Kaolin Company for the sum of six thousand dollars, payable to them on or before the first day of September, 1888. The said Aiken Mining and Porcelain Manufacturing Company to assume and pay all debts of the Nonpareil Kaolin Company that have been agreed to by President P. A. Emanuel. I am authorized by P. A. Emanuel, president, to make this sale, and will carry it out in good faith upon payment by said T. G. Lamar & Company of the said six thousand dollars. It is further agreed to place all the certificates of stock referred to, being twenty-five shares, in the hands of E. S. Hammond, Esq., in escrow, to be delivered to T. G. Lamar & Company, properly transferred on the books of the Nonpareil Kaolin Company to them, upon payment of the said six thousand dollars.

"J. E. MURRAY, Trustee, &c."

"We, as stockholders of the Nonpareil Kaolin Company, agree to this sale of stock.   W. W. Miller, Geo. O. Walker."

All these papers were executed by Murray during the absence

of Emanuel in the mountains. When this stock was placed in the hands of E. S. Hammond, the following paper was executed between himself and Murray: "The undersigned, E. S. Hammond, having been requested by Joseph E. Murray, secretary and treasurer of the Aiken Mining and Porcelain Manufacturing Company, and T. J. Davies, of the firm of T. G. Lamar & Co., on 20th day of August, 1888, to hold in escrow a press copy of a memorandum of agreement, dated 14th August, 1888, between said Aiken Mining and Porcelain Manufacturing Company and T. G. Lamar & Co.; and, also, the certificate for (25) twenty-five shares of the Nonpareil Company, held in the name of P. A. Emanuel and Joseph E. Murray, as trustees for the stockholders of the Aiken Mining and Porcelain Manufacturing Company, until the conditions stipulated in the said agreement were complied with, whereupon said certificate, properly transferred upon the books of the Nonpareil Kaolin Company, shall be delivered to said T. G. Lamar & Co. Now, said Thomas J. Davies having this day paid over to said E. S. Hammond the sum of $6,000, being the sum of money stipulated to be paid for said stock, 25 shares of stock, the said E. S. Hammond hereby acknowledges the receipt of said sum of $6,000, and delivered to said Thomas J. Davies the said certificates for twenty-five shares of stock; the said Joseph E. Murray being present and authorizing the same, and binding himself and the said Aiken Mining and Porcelain Manufacturing Company to duly transfer the same on the books of the Nonpareil Kaolin Company. (Signed) E. S. Hammond. In my presence and with my consent. (Signed) J. E. Murray." Upon the payment of the money, J. E. Murray executed the following receipt: "Aiken, S. C., 28 August, 1888. Received of E. S. Hammond $6,000, the sum paid by T. J. Davies for twenty-five shares of the stock of the Nonpareil Kaolin Company, left in escrow with him, to be delivered to said Davies upon the payment of the said sum of money. (Signed) J. E. Murray, Sec. & Treas. A. M. & P. M. Co."

It becomes necessary to conclude what Joseph E. Murray intended by all these papers. It will soon be made to appear why it is necessary to determine the intention which

animated the said Murray in all these transactions.

Ordinarily, a man is bound by papers to which he is a party, and of which his approval is evinced by his signature; but it has always been held that receipts may be explained, and we apprehend the rule is even stronger when in matters of execution of papers the intention of the maker is brought into question. Where any doubt exists, or there is any ambiguity as to the expressions of papers, resort is to be had to the actions of the parties to them; it may be inquired how they treated the transaction represented by the papers. In *Chicago v. Sheldon*, 9 Wall., 54, Mr. Justice Nelson, in delivering the opinion of the court, said: "What adds great weight to this view is, it accords with the practical construction given to the contract by both parties." In *Lowber v. Bangs*, 2 Wall., 737, this language is used by Mr. Justice Swayne: "Contracts, when their meaning is not clear, are to be construed in the light of the circumstances surrounding the parties when they were made, and the practical interpretation which they, by their conduct, have given to the provisions in controversy."

Adopting this view of the law, does it not seem irresistibly clear that Murray knew and intentionally pursued a line of conduct that recognized the ownership of these twenty-five shares of stock in the Nonpareil Kaolin Company to be in the Aiken Mining and Porcelain Manufacturing Company? Trace his conduct step by step from April, 1888, to the 28 August, 1888, and is not this made manifest? He denies all knowledge of the entries in the books, and yet, by one of the by-laws that he himself adopted, all the acts of any assistant he might place in charge of his books are saddled upon him as secretary and treasurer. That letter of the 11th August shows a wonderfully acute recognition of what those books disclose. Then the agreement of the 14 August, 1888—how clearly he demonstrates his practical conversance with the affairs of the parties, by taking care of Ferris' contract for kaolin, the price, the place of shipment, the terms of shipment. His very demand against the Aiken Mining, &c., Company, from its commencement as a corporation, is only $2,065.24, while the amount he receipted for as secretary and treasurer is $6,000.

But it is suggested that the certificates of stock show that it was held for the stockholders, and not for the corporation. This cause is in equity; here we pursue not shadows, but substance. No matter if we accept the word "stockholders" as a thing apart from the corporation, the testimony here establishes that it was intended by both Murray and Emanuel for the corporation, and wherever, in equity, such facts are establised, the conclusion is, that the true owner must prevail. Besides, it is by no means clear that the use of the term "stockholders" would not be construed the corporation. This use of terms imports that it is the property of all the stockholders. What other terms of property has a corporation than as the property of all the stockholders? Is not all the property of a corporation the property of its stockholders in the aggregate?

As we have before intimated, we are satisfied this property was the property of the Aiken Mining and Porcelain Manufacturing Company, both the certificate of shares and also the money realized therefrom. But we must advance a step further. Granted that this $6,000 was the property of the Aiken, &c., Company, and not that of Joseph E. Murray, yet it does not follow that he was guilty of a breach of trust with a fraudulent intent. This position must be most carefully considered. Here we have a civil action, wherein it is charged that Murray is guilty of a breach of trust with a fraudulent intention, and, therefore, guilty of larceny. What are the requirements of the law as to establishing such a charge in this State? In *Burckhalter* v. *Coward*, 16 S. C., 440, Mr. Justice McGowan said: "The judge was requested to charge, that 'when the words [this action was for damages for slander] impute crime to the plaintiff, the defendant, to support a justification that the charge is true, must show the plaintiff's guilt by evidence sufficient to convict him of the crime on a trial for it; and if the defendant fails so to do, the jury must find for the plaintiff.' We think it was error to refuse this request, and to hold that mere preponderance of evidence was enough to sustain the plea. Although it was not a criminal proceeding, a crime was charged, and the authorities hold in

such case that it is proper to make the same proof which would be necessary to convict the party in a criminal proceeding for that crime."

We adopt that as the law of this case. Therefore, it will be necessary that the testimony here adduced would be such as, in our judgment, would be necessary on the trial of Murray in the Court of Sessions on the charge of breach of trust with a fraudulent intention, for a verdict of guilty there. What is this offence under our criminal laws? We have no statute providing for a case of embezzlement. But in 1866 our criminal law was amended by this addition: "Any person committing a breach of trust with a fraudulent intent shall be held guilty of larceny." In *The State* v. *Shirer*, 20 S. C., 394, this definition of the Circuit Judge was approved by this court: "A breach of trust is where personal property of appreciable value, and of which larceny may be committed, is put into the possession of another; and when it is so put into his possession it becomes a trust, and while it so remains, if he conceives the purpose to convert that property to his own use, and does it with the intention to deprive the owner of the use of that property, then that is a breach of trust with a fraudulent intention." In the case of *The State* v. *Butler*, 21 S. C., 354, Chief Justice Simpson said: "The act on the subject of breach of trust makes the offence larceny in general terms; and we think when it placed it under the general head of larceny, it partakes of all the incidents thereto, and is governed by the law applicable to larceny as one of the classes of crime, whether statutory or common law * * * Larceny at common law is defined to be the taking and carrying away of the personal goods of another with felonious intent." The *animus furandi* must exist.

Now, in the case at bar, we must be satisfied beyond a reasonable doubt, by the testimony, that this $6,000 was the property of the Aiken Mining and Porcelain Manufacturing Company, and that this sum passed into the hands of Murray as the secretary and treasurer of that company, and that while so in his hands as such officer, he, with a fraudulent intent, converted the same to his own use. It will not be enough, if any one of these elements is wanting. They must

all exist. This is a serious charge. It is hoped it was not lightly made. It certainly exercises this court very deeply. The consequences to the defendant are momentous, and, therefore, we should be doubly careful. The effects upon society are also to be regarded very keenly. The business of life cannot be discharged without confidence in each other. No trust is more sacred than the care of money belonging to others. Looseness in enforcing the restraints placed by the law upon such relations cannot be excused. Crime must be repressed. Sympathy for the unfortunate is proper, but not at the expense of principle. As before said, this case has certainly exercised this court profoundly, but we are prepared to do our duty, however painful. We think and find the defendant guilty. We forbear any other utterance on this branch of the case.

Now, therefore, under the terms of its contract, the defendant, the Fidelity and Casualty Company, must be prepared to answer for the default of the assured, but there must be this limitation thrown about its liability, namely, it must only be required to pay the difference between six thousand dollars and the sum of two thousand and sixty-five dollars and twenty-four cents; that is to say, it must pay the sum of $3,934.76. It is proper that we should explain this result. This is an equity suit, and, therefore, we must apply its principles. When $6,000 of the money of the Aiken Mining and Porcelain Manufacturing Company passed into the hands of its secretary and treasurer, that corporation was his debtor in the sum of $2,065.24, and upon the principles announced in the case of *Union Bank* v. *Heyward*, 15 S. C., 296, we think this result will follow. In the case last cited, the teller was dismissed from his office, and on his settlement with the bank, retained from the funds in his hands that amount which he conceived the bank owed him as a salary for the year, $1,500; but it was determined that only $250 was due him, and judgment was only found against him for $1,250. Here, the secretary and treasurer was dismissed from his office; he claimed, though, that the company was his debtor, and in this very action the amount he claimed of the company has been allowed him. It is true $130 is objected to by this appeal. But

in considering those items, we find that the secretary and treasurer actually paid these items under the *bona fide* impression that they were just claims against the corporation, and inasmuch as the corporation has elected to claim the fund that was earned by these expenditures, we think they should be allowed.

Another proposition of the appellant should be noticed. It refers to the three thousand dollars of the funds belonging to the Aiken Mining and Porcelain Manufacturing Company, applied by Emanuel and Murray, without the authority of such corporation, to the development of the Nonpareil Kaolin Company. It is true this was done, and that such diversion of the funds of the first corporation to the aid of the second was a breach of trust. But, in the first place, we are satisfied there was no such breach of trust with a fraudulent intention in that matter; and, secondly, the first corporation has elected to take the fruits of that maladministration of its funds, and neither it nor its assignee, the Bank of New York, should be heard against that particular conduct.

We have thus endeavored in our own way to cover the grounds of appeal here presented, and, from the foregoing directions, it will be seen that the decree must be modified in the particulars herein ordered.

It is the judgment of this court, that the decree of the Circuit Court shall be modified on the principles herein announced, and in all other respects affirmed. Let the cause be remanded to the Circuit Court, with directions to carry into effect the modification herein provided.