**DOVER STEAMSHIP COMPANY, Inc., Petitioner,**

v.

**SUMMIT INDUSTRIAL CORPORATION, Respondent.**

United States District Court
S. D. New York.

Feb. 8, 1957.

Kirlin, Campbell & Keating, New York City, Edward L. Smith, New York City, of counsel, for petitioner.

Haight, Gardner, Poor & Havens, New York City, John C. Moore, New York City, of counsel, for respondent.

WEINFELD, District Judge.

Dover Steamship Company, owner of the vessel Liberty F, seeks an order pursuant to the Federal Arbitra-

tion Law, 9 U.S.C. § 4, to compel Summit Industrial Corporation as charterer of the vessel to proceed to arbitrate a dispute in accordance with the terms of a charter party. The parties agree that a charter party containing an arbitration provision was entered into but the charterer contends that because of a breach of a material condition precedent the entire contract was voided and hence arbitration is not enforceable.

On June 22, 1955, the respective agents of the owner and the charterer exchanged so-called "fixture" letters for the charter of the Liberty F or a substitute vessel to carry a cargo of cement from Antwerp to a South Korean port.

The letter sent by the charterer's agent specified the terms of the charter. One term provided that the standard form of charter party referred to as "Gencon" was to govern except as otherwise noted in the letter. Another specifically stated "Arbitration Clause New York."

On the day the letters were exchanged, the charterer's agent prepared for signature a formal charter party on the Gencon form, submitting the original to the owner's agents and the copy to the charterer. The original was signed by the owner's agent and sent to the charterer on June 27, 1955. The charterer did not at this time either execute or return the copy to the owner.

However, on June 29, 1955, long before the charterer executed the Gencon form, it requested its agents to notify the owner that as a result of FOA (Foreign Operations Administration) action, the contract under which it had intended to transport cement on the chartered vessel was in dispute. Amongst other matters, the charterer stated "We therefore will have to inform the ship's owner of our non-performance of the charter party as a result of this FOA intervention * * * [we] are compelled to suspend our cement order and consequently will have to request the ship's owner to relieve our obligations on the charter party.

The situation so arisen is beyond our control." The owner was duly notified by the charterer's agent of the foregoing.

Notwithstanding that the charterer felt impelled "to inform the ship's owner of our non-performance of the charter party", it subsequently in August, 1955, executed and returned to the owner's representatives the Gencon form of charter party which had been sent to it on June 27th. This contains a provision that in the event of any dispute between the owners and the charterers the matter should be decided by arbitration in New York. The parties agree that in substance the reference to arbitration in the fixture letter of June 22nd and the clause in the formal Gencon charter carry out their understanding as to the method of arbitration in New York.

The owner contends that since the charterer repudiated the agreement on June 29th prior to the execution and return of the formal Gencon charter party, it is not binding except insofar as it incorporates the terms and conditions of the fixture letter. The charterer insists that the Gencon charter party reflects the June 22, 1955, agreement of the parties. The reason for these conflicting contentions becomes apparent. The Gencon charter party contains a clause that the Liberty F was "en route Antwerp with cargo"; the fixture letter makes no reference thereto but the charterer contends this was the contemplation of the parties when the fixture letters were exchanged. The charterer contends the vessel on June 22, 1955, was not "en route Antwerp" but was either at Houston, Texas, or about to arrive there. It asserts that when it wrote the letter of June 29, 1955, stating its inability to perform (one week after the exchange of fixture letters and long before it returned the Gencon form of charter party) it was unaware of the vessel's position. It was not until December 5, 1956, that the charterer, in response to a demand by the owner for arbitration, first attempted to repudiate

the contract on the ground of alleged misrepresentation as to the vessel's position.

The charterer's basic position is that the statement of the vessel's position was an "essential and material condition of the contract" the breach of which entitled it to repudiate the entire contract, and in consequence the arbitration clause falls and hence arbitration may not be resorted to.

The owner claims that the charterer, for tactical reasons, deliberately executed and returned the formal Gencon charter in August, 1955, long after it had admittedly breached the agreement of June 22nd, knowing that the inclusion of the words "en route Antwerp with cargo" was an error.

While there is much merit to the owner's contention that the fixture letter, which incorporated by reference the Gencon provisions except as otherwise specified in the letters, reflects the agreement of the parties, it is unnecessary to make a determination of this issue. Neither is it necessary to pass upon the owner's contention that the charterer's notification of intention not to perform was an anticipatory breach which precludes reliance upon the Gencon contract which it signed thereafter.

Assuming arguendo that the Gencon form defined the terms of the charter party and accordingly included in the charter party is the statement that the vessel was "en route Antwerp with cargo", I am of the view that under the facts of this case it cannot defeat the right to arbitration. It should be noted at the outset that the charter was not limited solely to the Liberty F. Both under the fixture letters and Gencon form the owner was given the option to substitute a "similar American Liberty" ship. The provision in its entirety as set forth in the Gencon form reads:

"It is this day mutually agreed between Atlantic Carriers, Inc., as agents for owners of the American steamer 'Liberty F', of 7215 tons gross Register now en route Antwerp with cargo—Owner's option substitute similar American Liberty If 'Liberty F' substituted owner to nominate substitute at least fifteen (15) days prior to readiness * * * ".

In seeking to justify repudiation of the contract, the charterer relies upon a series of old cases typical of which are Lowber v. Bangs, 2 Wall. 728, 17 L.Ed. 768, and Behn v. Baines, 3 B. & S. 751, 122 Eng.Rep. 281, which hold that a statement in a charter party that a ship was at a certain place when the charter party was made is an express warranty the breach of which would justify the charterer's repudiation of the charter. The force of these authorities has been cast in doubt by the recent case of Aaby v. States Marine Corp., 2 Cir., 181 F.2d 383, where it was held that only a breach of warranty so substantial as to frustrate the purpose of the charter would justify repudiation. Although the case concerned only the warranty of seaworthiness, the Court also considered the whole question of repudiation of charters on the ground of breach of warranty. The Court, in questioning the Lowber and Behn cases, said whether a statement or representation in a charter party is to be considered as a warranty, the breach of which justifies repudiation, depends upon whether the parties intended it to have that effect; in the absence of an express provision the statement or representation will not be considered as a warranty unless it appears it is so material that the object of the charter would be substantially frustrated by a breach. See also 4 Williston, Contracts, § 1080 (Rev.Ed. 1936).

In the light of the provision in the Gencon form permitting the substitution of vessels at the option of the owner, it cannot be said that the parties intended "now en route Antwerp", assuming that it is part of the contract, to be a warranty the breach of which would justify repudiation. The owner

was under no obligation to have a substitute vessel en route to Antwerp so long as it tendered a Liberty ship before the cancelling date and nominated a substitute ship at least fifteen days prior to readiness. The very fact of the option to substitute a comparable vessel by a fixed date negates any concept that the position of the Liberty F was an essential or material part of the contract of charter party. Thus even assuming it was part of the agreement between the parties, and further assuming a breach thereof, it is not sufficient to justify repudiation of the agreement in its entirety.

Since the fixture letters and the Gencon form both contain an arbitration clause there is an agreement to arbitrate. And since it also appears that the charterer has refused to perform that agreement, the petitioner herein is entitled to an order directing arbitration thereunder. Kulukundis Shipping Co., S/A v. Amtorg Trading Corporation, 2 Cir., 126 F.2d 978.

The respondent makes the further contention that the name of the petitioner, Dover Steamship Co., Inc., does not appear in the fixture letter, the charter party, or the correspondence, and alleges there is no proof that it is the owner of the Liberty F. Accordingly it urges a trial should first be had to determine ownership of the vessel on June 22, 1955. This plea appears frivolous and without substance. Whether petitioner is the owner is a matter of proof to be presented to and determined by the arbitrators, who are to decide all other issues under the charter; including whether the clause in question was part thereof, and if so, was it breached and such damages, if any, which might be offset against petitioner's claim of damages.

An order may be entered directing that all matters in controversy proceed to arbitration.

Settle order on notice.