Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 The record exhibits five assignments of error, all founded upon exceptions taken in the court below to the admission
 
 *573
 
 or rejection of evidence. Of these the first is, in substance, that the court permitted the defendants to give in evidence what it is contended constituted at most only an equitable right, and what was, therefore, no defence against the legal title asserted by the plaintiff. The.exception cannot be understood without a brief examination of the titles under which each of the parties claimed the lands .in controversy.
 

 The title of the plaintiff had its origin in a provisional concession made by the Mexican government to Lazaro Peña on the 14th day of October, 1839. Peña was then in ■possession of the land, and the concession was made to him with the reservation that he should petition for the usual title from the political government. On the 13th day of October, 1840, he obtained a grant in the usual form from Don Juan B. Alvarado, then governor of the department of California, for the land then known by the name of “ Agua Caliente,” embracing the land now in dispute, and on the 8th of October, 1845, the grant was approved by the Departmental Assembly. Before it was made, however, though after the provisional concession, Peña conveyed all his interest in the land to Mariano
 
 G.
 
 Vallejo. In 1853 Vallejo instituted proceedings, under the act of Congress of March 3d, 1851, for a confirmation of the land to him, and it was confirmed by the District Court in 1859. The decree of confirmation contained the following proviso: “ Provided that this confirmation of the above land to the1 said M. GL Vallejo shall be without prejudice to the rights of the legal representatives of Lazaro Peña, the oi’iginal grantee, or whoever may be entitled to said lands under him; and said confirmation to said Vallejo shall enure to the benefit of any person, or persons, who may own or be entitled to the said land by any title, either, at law or in equity, derived from the original grantee by deed, devise, descent, or otherwise.” The record of the confirmation was subsequently brought into this court by appeal, and here it was adjudged that the decree of the District Court, in so far as it confirmed the original grant, be affirmed. It was under this decree of confirmation that the plaintiff claimed, both through
 
 *574
 
 a deed of Anna Hoeppener, sole heir of Andres Hoeppener, an alleged grantee of Vallejo, dated December 21st, 1858, and secondly, by a deed dated January 17th, 1863, from Vallejo himself.
 

 The defendants asserted ownership of the parcels of the rancho “ Agua Caliente,” now in controversy, under an alleged grant made by Vallejo to Andres Hoeppener, dated August 12th, 1846, about ten months after the grant to Peña had been approved by the Departmental Assembly.
 

 It thus appears that both parties claimed under Peña and Vallejo, and a brief examination will show that the nature of their titles was the same. If that of the plaintiff* was a legal estate (which it is not necessary to this case to decide), that of the defendants was equally so. That the right of Vallejo on the 12th of August, 1846, when he conveyed the property to Hoeppener, was not perfect, must be conceded; His claim had not been confirmed, and he had no patent. He had nothing but the Mexican espediente. Of course the right which he conveyed was also imperfect. But when afterwards the District Court confirmed the land to him, the confirmation enured to the benefit of his prior grantee. It was not the acquisition of a new title, but the establishment of his original right. And this was expressly decreed by the proviso already quoted. By that it was adjudged that the confirmation should enure to the benefit of any person or persons who owned, or were entitled to the land by any title in law or in equity, derived from the original grantee by deed, devise, descent, or otherwise. If, therefore, Hoeppener or his grantee's held any such title, it was confirmed to them as truly as if he or they had been petitioners for such confirmation. Now, it is in virtue of this decree of the Dis. triet Court that the plaintiff* claims. He has no standing without it. _ Asserting his rights through it, the law will not permit him to repudiate any part'of its provisions.
 

 It is argued, however, that the proviso to the decree of confirmation was aunulled by the action of this court. To this we do not assent. The judgment upon the appeal was that the origiual grant to Lazaro Peña was a good and valid
 
 *575
 
 grant, and that the decree of the District Court, in so far as it confirmed the original grant, be itself affirmed. This was no reversal of any portion of the decree of the District Court. On the contrary it left that decree in full force to all its extent. And by relation it was carried back to the inception of the title confirmed. It is a well-settled rule that where several acts concur to make a complete conveyance the original act is preferred, and all others relate to it.
 
 *
 
 Mr. Cruise, in his work on Neal Property,
 
 †
 
 says, “ There is no rule better founded in law, reason, and convenience than this, that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation.” The proviso was, therefore, nothing more than a declaration of what would have been the legal effect'of the decree without it. If, therefore, as is insisted by the plaintiff", the confirmation vested in Vallejo the legal title, it at the same time vested a legal estate in the grantees of Vallejo, or Peña, who held portions of the land under conveyances from the confirmees.
 

 The second exception taken in the court below is, that the court received in evidence an instrument of writing, dated August 12th, 1846, claimed by the defendants to be a grant of the land by Vallejo to Andres Hoeppener, and this is the basis of the second assignment of error. The bill of exceptions shows that the execution of the instrument was duly proved, that it was indorsed upon the espediente to Peña, that at the time when the deed was made Hoeppener received full possession of .the land from Vallejo, and that he continued thereafter in such possession until the land was sold by him. It is argued'that the deed was only a license to occupy, and not a grant of the land, hence that it was revocable at will, conferring a mere tenancy-at-will and not a legal estate. Certainly it is a very informal instrument, and were the rules of the common law to be applied to it there would be difficulty in maintaining that it was a grant of the fee.
 
 *576
 
 It is to be noted, however, that its character and effect are to be determined by Mexican law. It was made before California had been ceded to the United States. In inquiring what was the intention arid effect of the instrument we are not, then, to be guided by the rules of the common law or by the British statute of uses. That it was more than a license to occupy is plain. Its language is, “I grant and transfer
 
 (cedo y transparo)
 
 all the right which I have in the land mentioned, to Don Andres Iloeppener, who shall make” (or have) “ such use thereof as may be convenient to him.” These are not words of mere license. They describe the subject of the grant, not as a possessory right, but as “ all the right ” of the grantor “ in the land.” Full effect cannot be given to all the words of the instrument unless it is held to be a conveyance of all Vallejo’s title. If the intent had been to transmit less, why describe the subject as all right in • the land ? It is argued that the words following the operative words of transmission to Hoeppener, viz.: “ who shall make such use thereof as may be most convenient to him,” indicate that no more than á license to occupy was intended. They do not appear to us to warrant any such inference. They, or other words of like import, are common in Mexican grants which have been held to be conveyances of the entire estate of the grantors.
 
 *
 
 In the latter case the effect of such clauses is considerably discussed. Instead of being words of limitation or restriction, they seem rather intended to confer the largest dominion. And in our law they have been held to enlarge into a fee, a devise which, without them, would have been only a life estate.
 

 If there were any doubts respecting the deed, whether it was intended as a grant or a license, they would be dispelled by noticing the construction manifestly given to it by the parties. This is an aid that may always be called in when’ the meaning of a contract is ambiguous.
 
 †
 
 There was no
 
 *577
 
 necessity for reducing to writing a mere license. Yet this contract was in the form of a conveyance, reduced to writing, and indorsed upon the espediente. There was no necessity of livery of seizin if the deed was a mere license, yet Hoeppener was actually put into possession of the land by the grantor, and he or his grantees retained the possession unchallenged, so far as it appears, from August 12th, 1846, until this suit was brought. Vallejo never, claimed any right until 1863, when he made a grant to the plaintiff, not of the land, but of “ all his right, title, and interest” in it. In addition to all this the plaintiff recognized a possible right in Anna Hoeppener, the heir of Andres Hoeppener, by taking a deed from her grantee, to whom she had conveyed her “right, title, and estate” in the tract of land, in the year-1858. These facts tend strongly to show that the parties, understood Vallejo’s deed as conveying to Hoeppener absolute ownership of the land described in it.
 

 It is insisted, however, that even if the intent was to convey the land, instead of mere license to occupy it, the instrument was ineffectual, because informal. It is said that it did not contain all the requisites of a valid Mexican grant. It is doubtful whether this point was made in the court below. It does not distinctly appear in the bill of exceptions that it was urged as an objection to the admission of the deed. The. objection appears rather to have been that Hoeppener obtained by the deed a mere license, which terminated when he.asserted title to the land, or attempted to convey it. Such was the reason stated for the objection in the bill tendered by the plaintiff. But assuming that it is presented for our consideration, -we are of opinion the deed contains all that -was-necessary to constitute an operative grant. That it was executed and delivered, and that, in pursuance of it, Hoeppener was put into possession by the grantor, are facts that are not controverted. This is all that, under the civil law, is necessary to transfer titles. Livery of seizin is the controlling fact. Admitting that, under the Mexican law, a contract in writing was necessary to a private conveyance, it is nevertheless true that the form of the instrument was not
 
 *578
 
 material. Any form would answer that manifested an intent to convey. Here were words of grant
 
 {cedo y transparo).
 
 The word
 
 cedo
 
 (I grant) is the ordinary word used in Mexican conveyance to pass title to lands.
 
 *
 
 Though the earlier cases in California asserted that the consideration or price of the grant must be mentioned in the written contract, or, at least, that it must be mentioned a price was paid, the later cases have asserted a different doctrine.
 
 †
 
 It is quite clear that in no case could mention of a price ever have been deemed necessary when there was no price — when the transaction was a gift. In such a case a writing without mention of any consideration, coupled with livery of seizin, or delivery of possession, would consummate the transfer. It would answer no good purpose to review the authorities upon this subject. Suffice it to say, that in view of the language of the instrument, of'the facts that Vallejo put Hoeppener into possession under it, and that the grantee and his successors in the title remained in unchallenged possession for more than seventeen years before this suit was brought, we are constrained to hold that it amounted to a conveyance of all right to the lands which Vallejo had.
 

 The third assignment of error is founded upon the third exception taken in the court below. If is, in substance, that the court received in evidence a deed from Hoeppener to Carlos Glein, dated December 1, 1847. It was offered with sundry, other conveyances, by which the title conveyed to Glein became vested in, Whitman, one of the defendants in error.' In the deed from Hoeppener, thus received, the subject of the grant was described as follows: “ All that certain tract and parcel of land, containing three hundred acres, more or less, being aportion of the rancho named ‘ Agua Caliente,’ as transferred to the said Andres Hoeppener by M. G-. Vallejo, the said three hundred acres being more particularly bounded and described as follows, to wit: On the west side by Sonoma Creek, on the east side by the Napa Hills, on the north by
 
 *579
 
 Yeltan’s farm, and on the south by land of Ernest Rufus.” In connection with the offer of this deed it was proved that Glein, the grantee, at the time of his purchase, took possession of the tract thus conveyed (the same now held by Whitman), and paid a valuable consideration for it; and that all-the succeeding grantees, including Whitman, paid valuable considerations for their grants at the times of their several purchases, and took possession of the laud, remaining in open and notorious possession while their interests continued, Whitman still retaining his. It was also proved that when Steinbach, the plaintiff, acquired his title to the Agua Caliente rancho, Whitman was in the open and notorious possession of the tract, claiming to own the same.
 

 To the admission of this deed from Hoeppeuer to Glein the plaintiff objected, for two reasons assigned at the time. The first of these was, that the deed did not import to convey the title to any particular tract of land; and the second was, that it created no legal estate, and that it was therefore incompetent evidence for any issue made in the action. Neither of these reasons is, in our opinion, well founded. The first rests upon a mistake of fact. We are unable to perceive that there was insufficient certainty in the description of the land granted. It was identified by giving natural boundaries for both its east and west sides, and by calls fin adjoining proprietors upon the north and the south. This was enough. In regard to the second reason, we remark that the entire deed is not before us. It is not found in the record, and there is nothing, therefore, to show that it did not convey all the estate which Hoeppener had acquired by the deed to him from Vallejo. If it did not, it was incumbent upon the plaintiff' in error to show the fact by exhibiting to us the deed itself. We infer, from the course of the argument, that the objection was intended only to reassert that Hoeppener’s title was a mere equity. The worthlessness of that assertion has already been sufficiently considered.
 

 The fourth exception is quite similar to the third. It is that the court received in evidence, against the objection of the plaintiff, a deed, dated November 14,1846, from Andres
 
 *580
 
 Iloeppener to J. J. Dopken, whose title subsequently passed to Martha C. "Watriss, another of the defendants. The deed was for six hundred and forty acres, part of the rancho “Agua Caliente” granted to Peña, confirmed to Vallejo, and conveyed by him, as above mentioned, to Hoeppener. Standing by itself, the deed is indefinite in its description of the land intended to be granted, and an insufficient designation of the subject of the grant. But it was not offered or received alone. It was made, as will be perceived, while the country was under Mexican rule, and its offer was attended by proof of what amounted to livery of seizin — an actual putting of the grantee into possession under it, and a maintenance of that possession from 1846 until 1864, when this suit was brought. It had been admitted, when the deed was received in evidence,-that Vallejo had put Hoeppener into possession of the entire rancho, and that Hoeppener continued in possession until he sold to Dopken, when he retired, and allowed his grantee to take possession of the tract sold. This was a parol identification followed by long possession unchallenged. Considering the looseness of Mexican grants at that time, and the acquiescence for so many years of the grantor and all claiming under him, we cannot say that the deed, in connection with this other evidence, was erroneously admitted.
 

 The only remaining assignment of error is, that the court refused to allow the plaintiff to give evidence in rebuttal to prove that, even if the deed shown by the defendants from Hoeppener did make out an equity in his grantees, Hoeppener failed to perform the conditions upon which Vallejo’s grant was made to him, upon which the equity rested, and, therefore, that the equity expired.
 

 A few words will dispose of this. If the assignment correctly represented what was the ruling of the court, it would be a sufficient answer to it, that the deed from Vallejo to Hoeppener was unconditional, and, therefore, that his title, and that of his grantees, was not dependent upon the performance or non-performance of conditions. But the court made no such refusal as that of which the plaintiff com
 
 *581
 
 plains. What the court did rule was, that Hoeppener’s statements, made after he had conveyed the laud to others, could not be admitted to invalidate his deeds. Surely such a ruling requires no vindication.
 

 Finding no error in the record, the judgment is
 

 Affirmed.
 

 *
 

 Viner’s Abridgment, 290; Relation.
 

 †
 

 Vol. 5, pp. 210-11.
 

 *
 

 Vide
 
 Hayes v. Bona, 7 California, 154; Havens
 
 v.
 
 Dale, 18 Id. 362; and Mulford
 
 v.
 
 Le Franc, 26 Id. 88.
 

 †
 

 French
 
 v.
 
 Carhart, 1 Comstock, 102, nnd cases therein cited; United States
 
 v.
 
 Appleton, 1 Sumner, 502-3.
 

 *
 

 Mulford
 
 v.
 
 Le Franc, 26 California, 108.
 

 †
 

 Havens v. Dale, 18 California, 366 ; Merle v. Mathews, 26 Id. 455.