[First National Bank of Decatur v. Henry.]

# First National Bank of Decatur v. Henry.

### *Assumpsit.*

(Decided May 11, 1905.   Rehearing denied Nov. 15, 1906.
49 South. 97.)

(The publication of this case was held up pending its determination by the United States Supreme Court.)

1. *Banks and Banking; Liability to Depositor; Deposit by Partner for Benefit of Firm.*—Where a member of a firm made a deposit in its favor of his own money taking a note from the firm for the amount of the deposit payable at bank, and on making the deposit took a deposit slip reciting that the deposit was to be protected by the bank for his benefit by compress receipt and bills of lading sufficient to cover the amount, the receipts to be deposited with the bank in like manner as other similar accounts, the effect of the whole transaction was a loan from him to the firm on their note, the money to be turned over to them by the bank when they deposited collateral for his benefit, so that he held the double obligation of the firm for the money, if the firm got it from the bank, and the obligation of the bank not to let the firm have the money without the deposit of collateral, the note not affecting the transaction between the depositor and the bank.   The effect of the contract being that the bank would protect the deposit for the benefit of the depositor by taking from the firm compress receipts and bills of lading sufficient to cover the amount thereof, or that it would keep at all times the amount deposited or compress receipts or bills of lading deposited by the firm sufficient to cover the amount, or so much thereof as the bank let them have, and the bank was bound thereby unless released.

2. *Corporations; Organization.*—Under the facts in this case it is held that the corporation known as Knight Henry & Co., was duly incorporated under the proceedings prescribed by the court of 1896, and contained in sections 1251-1260.

3. *Same; Estoppel to Deny Corporate Existence; Parties.*—Where parties contract with each other as corporations, in respect to such contract they are estopped to deny corporate existence.

4. *Banks and Banking; Special Deposits.*—A deposit is special when it is a deposit of stocks, bonds and other securities, or of money to be specially kept and returned to the owner, or money deposited for a fixed period of time, or on unusual conditions, which is mingled in the general fund like a general deposit and repaid therefrom, or money which is to be applied by the bank at the depositor's request for specific purposes.

5. *Same; National Banks; Liability to Depositor.*—Although there may be some ultra vires agreement connected with the transaction

a national bank who has lawfully received property must account for it or its proceeds; it cannot escape liability for money placed in its hands by setting up that it made an ultra vires agreement with the depositor to pay out the money to some third person on deposit of collateral for the depositor's benefit, where it is shown that it paid out the money to such person without taking the collateral agreed on.

6. *Same; Default as Collecting Agent; Measure of Damages.*— The holder of a bill or note is entitled to recover of a bank guilty of negligence or default as a collecting agency as measure of damages, the actual loss suffered, which is prima facie the amount of the bill or note placed in its hands; but evidence is admissible to reduce it to a nominal sum.

7. *Same; Failure to Secure Debt of Third Person to Deposit; Evidence.*—Unless the bank showed that it had taken receipts or bills of lading sufficient to cover the amount deposited and which it had paid out to a third person under the contract, it could not avail the bank·to show that there had been a shrinkage in the value of cotton, the action being against the bank for failure to take warehouse receipts for cotton, and bills of lading as collateral security, for the indebtedness of such third person.

8. *Confusion of Goods; Commingling of Collateral; Liability of Bank.*—Where a bank commingled its own collateral for cotton given to secure its own debts with collaterals which it held to secure a note payable to its bank owed to a depositor in such a way that it was impossible to distinguish one set from the other, all the collaterals became the property of the depositor for the security of his debt.

9. *Corporations; Liability for Wrong; Ultra Vires.*—The doctrine of ultra vires has no application as a defense to an action for a wrong of which a corporation is guilty.

10. *Same; Liability for Acts of Servant.*—Corporations are liable for the acts of their servants done in the scope of their employment in the same manner and to the same extent that individuals are liable under like circumstances.

11. *Actions; Waiving Tort and Suing on Account.*—The owner of goods in possession of another, who without legal excuse refuses to deliver them to the owner on demand, may elect to sue as for a conversion or waive the tort and treat the wrong doer as a purchaser, and sue and recover on account for the value of the goods.

(Tyson, C. J., Simpson and Denson, JJ., dissent.)

APPEAL from Morgan Circuit Court.

Heard before Hon. O. KYLE.

Assumpsit by A. G. Henry against the Frst National Bank of Decatur. Judgment for plaintiff and defendant appeals. Affirmed.

HARRIS & EYSTER, E. W. GODBEY, and W. L. MARTIN, for appellant.

GOODHUE & BLACKWOOD, for appellee.

HARALSON, J.—The undisputed facts are, that on the 2d of October, 1900, the plaintiff, A. G. Henry, deposited with the defendant bank $12,000, taking a certificate of deposit as follows: "First National Bank of Decatur. $12,000.00. Decatur, Alabama, Oct. 2, 1900. A. G. Henry has deposited in this bank, twelve thousand dollars payable to the order of himself, Dec. 15, 1900, on the return of this certificate properly endorsed. Interest, at 3 per cent. if left twelve months. W. W. Littlejohn, Cashier."

The money that this certificate represented, was the money of and belonged to the plaintiff, and was not the money of his firm, Knight, Henry & Co., at that time existing, or of the corporation afterwards formed under the same name, of which he and others were stockholders, nor of any other person, so far as appears. Knight, Henry & Co., had no claim to this money. It was wholly that of plaintiff. The corporation of Knight, Henry & Co., and plaintiff were as distinct and independent as two persons could be.

It is shown that thereafter, on December 15, 1900, the plaintiff surrendered said certificate of deposit (of the 2d of October 1900), and deposited (in said bank) the amount therein and thereby called for, to the credit of Knight, Henry & Co., receiving therefor a deposit slip or ticket in words and figures as follows:

"First National Bank. Deposited by Knight, Henry & Company, Decatur, Alabama, 12/15, 1900, by A. G. Henry $12,000.00, to be protected for benefit of A. G. Henry by compress receipts or bills of lading sufficient to cover above amount, said receipts to be deposited with the bank by Knight, Henry & Company in like manner as other similar accounts. W. W. Littlejohn, Cashier."

159—24

On the same date, the plaintiff took from Knight, & Co., their note for $12,000, which was as follows: "Decatur, Alabama, December 15th, 1900. By September 1, 1901, we promise to pay to A. G. Henry or order, through the First National Bank of Decatur, Ala., twelve thousand dollars for value received, at 6 per cent. And we hereby waive all exemptions under the laws of the state of Alabama, and agree to pay ten per cent. attorney's fees if collected by law. (Signed), Knight Henry & Co., by J. W. Knight, Secretary and Treasurer."

This was the same money for which the foregoing certificate of deposit was given by the bank. If the note had been paid in whole or in part by the maker, that would have been a satisfaction to the payee, the plaintiff, to the extent of the payment, and between the bank and him, there could have existed no indebtedness for the amount of the payment growing out of that certificate of deposit, and the money remaining in the bank would have belonged to the makers of said note. It turned out as the evidence tended to show that there were some payments made on said note, and to the extent of such paments, if made, the jury were charged that the note was entitled to credit. The note as has been suggested, was simply the promise of Knight, Henry & Co., to repay the money which they were to get under the terms and stipulations of the contract entered into between the bank and Henry, without effect upon the transaction between Henry and the bank. "The effect of the whole transaction was that Henry loaned the money to Knight, Henry & Co., taking from Knight, Henry & Co., their note, and the money was left in the hands of the bank to be turned over to Knight, Henry & Co., when Knight, Henry & Co., deposited with the bank collateral for the benefit of Henry. So, the plaintiff held the double, though not inconsistent obligation

[First National Bank of Decatur v. Henry.]

of Knight, Henry & Co., for the money, if they got it from the bank, and also the obligation of the bank, not to let them have the money without the specified collaterals.

It is not disputed that the bank did not comply with the stipulation in the certificate of deposit to protect the $12,000 for the benefit of plaintiff, by taking and holding for Henry compress receipts or bills of lading sufficient to cover the amount, although it lent Knight, Henry & Co., the full amount.

The cashier testified, that the plaintiff about the 1st of September, 1901, demanded the $12,000 or the compress receipts or bills of lading, and he told him that the bank did not owe him anything, that he owed the bank; that they did not have any such collaterals for him; that they had some on hand but none for him. The plaintiff testified also, that about the 1st of September, 1901, he demanded the money or bills of lading, and the cashier told him that they did not have anything—compress receipts, bills of lading or the money.

There are 12 counts in the complaint, and, as stated by counsel, the first 6 of the 12 rely upon the breach of the agreement entered into between plaintiff and the bank, whereby the bank contracted to protect the $12,-000 for the benefit of the plaintiff, by taking bills of lading and compress receipts to cover that amount if loaned. These counts are all based on the breach of this contract, framed to meet the varying phases of the evidence. The seventh, eighth, ninth, tenth and eleventh counts are common counts for money had and received, money paid, money lent and money due by account.

The case was tried upon the general issue and the plea of payment and set-off.

The court below, at the request of the plaintiff charged the jury, that if they believed all the evidence, they

should find for the plaintiff, and that the measure of his recovery would be the $12,000 sued for, together with the interest thereon, less a credit of $1,267.45 of date September 2, 1901, and less a further credit of $1,000, if the jury should find from evidence that Henry consented to release this $1,000.

There are in the case a vast number of assignments of error, 135 on pleadings alone. It would be an almost endless and an unnecessary task to pursue these assignments, since they are referable to and determinable by a few leading facts and principles.

In construction of the certificate of deposit, counsel for defendant in brief say: "The first part of the instrument is not different from any ordinary deposit slip. It evidences merely the deposit of $12,000 to the credit of Knight, Henry & Co., by A. G. Henry. Added to this was simply the stipulation: 'To be protected for the benefit of A. G. Henry by compress receipts and bills of lading sufficient to cover amount; said receipts to be deposited with the bank by Knight, Henry & Co., in like manner as other similar accounts.' There are but two constructions in the case, and that is whether the collateral was to be deposited before the withdrawal of the funds, or any part thereof (whether the bank's receipt of the collaterals was to be a condition precedent to the use by Knight, Henry & Co., of the money deposited to their credit); and second, whose duty it was to see that the deposit was protected." Much argument is indulged in by them to show, that the collaterals provided for were not to be deposited before the withdrawal of the funds by Knight, Henry & Co., and that they alone and not the bank, were authorized to handle the collaterals. It is also insisted by them, that the certificate as to taking collaterals, was ultra vires as to the bank, its cashier and Knight, Henry

& Co.; that Knight, Henry & Co., was not a corpora-
tion, etc.

The contention of the plaintiff, which seems to us
to be reasonable and according to the terms of the certi-
ficate of deposit, is that by this contract the bank in sub-
stance agreed, that it would protect this $12,000 for the
benefit of A. G. Henry by taking from Knight, Henry
& Co., compress receipts and bills of lading, sufficient
to cover the amount of the $12,000 that it let go to
Knight, Henry & Co.; or, that the bank agreed that it
would have and hold at all times either the $12,000, or
compress receipts or bills of lading deposited by Knight,
Henry & Co., sufficient to cover the $12,000, or so much
thereof as the bank let them have. That is the plain and
unambiguous language of the certificate, and it defies
argument to make it plainer. The bank is bound by it,
unless released therefrom on some other principle. It
guaranteed the protection stipulated, and it would seem
to be against all reason, that Knight, Henry & Co., the
party to whom the money was to be lent, and against
whom protection was to be sought, should have the entire
control of the collaterals, as to whether any should be
furnished or not, and the amount and character. The
contention seems to be that the bank had the right to
let the money go to Knight, Henry & Co., without the
deposit of any collaterals whatever and that the obliga-
tion to put collaterals in the bank rested wholly upon
Knight, Henry & Co., a corporation, that was not even a
party to the contract. If this were true, the letter as
well as the spirit of the contract would be abrogated.

It is contended that Knight, Henry & Co., was not a
corporation, but the contention seems to be without mer-
it. The reason for the insistence is, as it would seem, as
suggested by plaintiff's counsel, that a partnership had
existed under the name of Knight, Henry & Co., and if a

partnership and not a corporation, then Henry was re-sponsible for the money taken from the bank by Knight, Henry & Co., and this would destroy his right of action against the bank. An examination of the record shows that the company was incorporated on the 23d of November, 1900, by proceedings instituted for that purpose in the probate court of Jefferson county. A declaration was filed in said court signed by A. G. Henry and Robert N. Bell, on the 26th of October, 1900, giving the names and residences of the subscribers, the name of the company, Knight, Henry & Co., a cotton company, the purposes for which organized, and the nature of the business to be carried on, its principal place of business, the amount of the capital stock and the number of shares into which it was to be divided, etc.

A commission was, accordingly, duly issued to said parties, authorizing them to open books of subscription. Afterwards, on the 26th of October, 1900, a report was made and filed by the subscribers; that they were called to meet together, that 50 per cent. of the proposed capital stock had been subscribed in good faith, etc., and that they had organized under the name of "Knight, Henry & Co., a cotton company," by the election of a board of directors, a president, secretary and treasurer, etc. On the 23d of November following, a certificate of incorparation was regularly issued to said parties by the judge of probate, certifying that the said parties, their associates and successors were duly organized as a corporation under the name and style of Knight, Henry & Co., for the purposes expressed in their said declaration, etc.

So far as has appeared, the proceedings seem to have been in close conformity to chapter 28, art. 11, of the Code of 1896 (sections 1251-1260). Furthermore, the record shows, without conflict, that the bank dealt with Knight, Henry & Co., as a corporation in this transac-

tion. Henry testified that when he made the deposit, he called the attention of Mr. Littlejohn, the cashier, to the incorporation, and stated to him, that he was no longer a partner of Knight, Henry & Co.; that the business was incorporated; and Mr. Littlejohn testified that, "on December 15, 1900, when Mr. Henry made this deposit, he said that the business that they were carrying on was a corporation business. I wrote his certificate of deposit and took for it the deposit slip of Knight, Henry & Co. He said the business had changed, that the business of Knight, Henry & Co., was a corporation."

"When parties contract with each other as corporations, they are in respect of such contracts estopped to deny corporate existence."—*C. & C. G. Co. v. F. L. Co.*, 121 Ala. 340, 25 South. 506.

Much has been said with the view of showing that the transaction of this deposit with the bank was ultra vires. Primarily, deposits with a bank are special or general, special like stocks, bonds, and other securities, and sometimes money, to be specially kept and returned to the owner, or money deposited for a fixed period of time, or on unusal conditions, which is mingled in the general funds like a general deposit, and is repaid therefrom; or money which is to be applied by the bank at the depositor's request for specific purposes.—5 Cyc. 313.

In the same volume (pages 558, 559 )it is said: "A national bank can purchase notes and bills; rediscount notes or collateral security; borrow on its own notes; deal in national bonds; compromise a debt; pay money and take securities in settlement; receive special deposits, besides those usually received by banks; endorse and guarantee paper, and issue a certificate of deposit." In that respect its powers seem to be as ample as other banks.

In *National Bank v. Graham,* 100 U. S. 699, 25 L. Ed. 750, it is laid down, that a national bank is lable for damages occasioned by the loss, through gross negligence, of a special deposit made in it with the knowledge and acquiescence of its officers and directors; that gross negligence on the part of a gratuitous bailee, though not a fraud, is in legal effect, the same thing, and that the doctrine of ultra vires has no application in favor of corporations for moneys converted by them.

Whether the principle of ultra vires invoked in this case has application, it is, perhaps, unnecessary for us to decide. The evidence shows without dispute, that the bank commingled its own collaterals for other cottons, to secure its own debts, with the collaterals if any which it held to secure the debt of plaintiff, in such a way that it was impossible to distinguish between them,—the one set from the other. In such condition, all the collaterals became the property of plaintiff to secure his debt. The principle has been thus stated : "When the trustee mixes the trust money with his own, so that it cannot be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out the amount due the cestui que trust.   *   *   * An agent is bound to keep the property of the principal separate from his own. If he mixes it up with his own, the whole will be taken, both at law and in equity, to be the property of the principal until the agent puts the subject-matter under such circumstances that it may be distinguished as satisfactory as it might have been before the unauthorized mixture on his part. In other words, the agent is put to the necessity of showing clearly what part of the property belongs to him, and so far as he is unable to do this, it is treated as the property of the principal.   *   *   * It would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal."—*Harrison v. Smith,*

[First National Bank of Decatur v. Henry.]

83 Mo. 210, 53 Am. Rep. 571; 1 Story's Eq. § 468; *M. Bank v. Walker,* 130 U. S. 267, 9 Sup. Ct. 519, 32 L. Ed. 959; *Burnes v. Campbell,* 71 Ala. 272.

The evidence in the case shows that the bank did not keep any collaterals it may have taken to secure the plaintiff's money distinguishable from any other, and when plaintiff applied for his money or his collaterals, he was informed that the bank had neither for him.

It appears that Knight, Henry & Co., became insolvent and assigned, and the bank received from the assignee payment for the compress receipts it had at the time plaintiff made demand on it. The cashier testified, that on the occasion of his demand, the bank had some receipts, but they were all to secure the bank, and he made no further demand.

The proof shows, as has been stated, that the bank received pay for these collaterals. The principle applies, that a national bank having lawfully received property must account for it or its proceeds notwithstanding some ultra vires agreement connected with the transaction. As contended by counsel, it cannot escape liability to Henry for the $12,000 which he placed in its hands by pleading that it made with him an ultra vires agreement to pay out this money to some third person upon the production and deposit of collaterals for his benefit, when the evidence shows it paid out the money without taking the collaterals agreed upon. The bank, as appears, is whole, has lost nothing by the transaction, and Henry is out the larger part of his money. "Corporations are liable for every wrong of which they are guilty, and in such cases the doctrine of ultra vires has no application," and "corporations are liable for the acts of their servants, while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances."—*Merchants' Bank v. State Bank,* 10 Wall. 605, 644, 645, 19

L. Ed. 1008; *Logan County N. B. v. Townsend,* 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; *First N. B. of G. F. v. Anderson,* 172 U. S. 573, 19 Sup. Ct. 284, 43 L. Ed. 558.

"The measure of damages which the holder is entitled to receive of the bank or other collecting agent who has been guilty of negligence or default in respect to it is the actual loss which has been suffered. The loss is prima facie the amount of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum."—1 Dan. on Nego, Instruments, § 329; *McPeters v. Phillips,* 46 Ala. 496.

"The owner of goods in the possession of another party who, without legal excuse refuses to deliver them to the owner on demand may sue in tort for a conversion, or he may waive the tort and treat the wrongdoer as a purchaser and sue and recover upon account for their value."—*Bradford v. Patterson,* 106 Ala. 401, 17 South. 536.; *Potts v. First N. B.,* 102 Ala. 286, 14 South. 603.

It was proposed to be proved that the prices of cotton fluctuated and at times was low. Unless the bank showed that it had taken the warehouse receipts or bills of lading sufficient to cover the amount, which it did not attempt to do, it could not avail the bank to show that there had been shrinkage in the value of cotton. That question could only arise in the event the bank should show that it had once taken collaterals sufficient to cover the amount; that it still had the identical collaterals on hand for the benefit of plaintiff, and that they had diminished in value on account of a shrinkage in the price of cotton. The bank insisted it had no collaterals for the benefit of plaintiff.

The judgment below is affirmed.

McClellan, C. J., and Dowdell and Anderson, JJ., concur.

## On Rehearing.

On application for rehearing WEAKLEY, C. J., and DOWDELL and ANDERSON, JJ., concur in the result.

TYSON, J. (dissenting.)—The appellee was a member of a partnership at Decatur, Ala., under the name of Knight, Henry & Co., which did business with the appellant during the cotton season of 1899 and 1900, and up to November of the latter year, when the said firm was indebted to appellant in a large sum; the amount being $20,000 or more. On the 2d day of October the appellee individually deposited with appellant $12,000, taking a certificate reciting such deposit and that it was to bear interest at 3 per cent. if left for 12 months. In November it seems the appellee formed a corporation to succeed the copartnership under the same name of Knight, Henry & Co., and which did succeed to the business which was that of dealing in cotton. The assets of the firm were transferred to the corporation in payment of subscriptions to capital stock, and the appellee was president and Knight was the manager and secretary and treasurer. There was no change in the way of doing the business. The account of the firm of Knight, Henry & Co., with appellant was continued under the same name and embraced all the dealings of the corporation with appellant after it succeeded to the business. Thereafter, on the 15th of December, after the firm had ceased to exist and the corporation had succeeded to its assets and business, the appellee surrendered his certificate of deposit and had the money it called for passed to the credit of Knight, Henry & Co., on the books of the appellant. And the appellee on the last of December, 1900, took the note of the corporation for this $12,000 so deposited, dated back to 15th of December, and had it stip-

ulated therein that it was to bear interest at 6 per cent. and was payable in bank 1st of September, 1901. The corporation continued in business until September, 1901, when it became insolvent and made an assignment for the benefit of its creditors. The appellee filled the office of president under a stipulation that he should draw a salary; and he collected on the note taken for said $12,000 on September 2, 1901, the sum of $1,261.45. After the failure of the corporation the appellee brought this suit on an alleged liability of the appellant to him growing out of said deposit of $12,000.

When the deposit of the $12,000 was made, on the 15th of December, 1900, the firm had ceased to exist. The plaintiff below himself testified that it terminated on the 23d of November, and he informed the appellant, at the time of making the deposit, that the corporation had succeeded to the firm, and that the firm was no longer in business. The appellee also testified that the money was intended to be used by Knight, Henry & Co., in buying cotton; that is, in business thereafter to be transacted. Therefore there can be no doubt the deposit was intended to be to the credit of the corporation, and this is corroborated by the fact that appellee took the note of the corporation for the amount due September 1, 1901. At the time of making the deposit to the credit of Knight, Henry & Co., a deposit slip was issued by the appellant and given to appellee in these words and figures: "First National Bank. Deposited by Knight, Henry & Company, Decatur, Ala., 12/15, 1900, by A. G. Henry, $12,000.00, to be protected for benefit of A. G. Henry by compress receipts or bills of lading sufficient to recover above amount, said receipts to be deposited with the bank by Knight, Henry & Co., in like manner as other similar accounts. W. W. Littlejohn, Cashier." The appellant's liability is supposed in some

[First National Bank of Decatur v. Henry.]

way to arise out of this transaction. After the deposit the said Knight, Henry & Co., continued business with appellant until its failure. It would get money to buy cotton, and make payments with drafts against bills of lading attached, and until shipment would deposit compress receipts for the cotton. The $12,000 deposit went into the general account of the concern as a credit, and on the insolvency of the corporation there was nothing in the hands of the bank, except what was held for the balance due, and such securities as it had, were turned over to the assignee on the discharge of the debt by him with the consent of the appellee under an agreement.

The claim of the appellee is that the bank is liable to him for this $12,000, because it let the corporation have this money and did not take and hold for his account and deliver to him on demand, in September, 1901, compress receipts and bills of lading for cotton sufficient to cover the same. This, of course, involves the construction of the deposit slip, and not only the capacity of the appellant to make a contract such as the appellee insists it made, but also a consideration and interpretation of the whole conduct of the parties after the transaction, so far as it tends to show the understanding and interpretation put upon the writing by themselves, and also the transactions between the appellee and the corporation, so far as they tend to raise an estopped against the plaintiff to maintain this suit. The appellee, on the maturity of the corporation note held by him, before commencing his suit, demanded the $12,000 or compress receipts and bills of lading from appellant to cover the same, and then went to the office of the corporation and made the collection noted above on the note he held against it.

The plaintiff preferred his claim in 12 counts. The first 6 claim damages in varying forms for the breach of

an agreement by which defedant promised, in considera-
tion of the deposit of $12,000 with it, to turn over the
same to Knight, Henry & Co., upon the delivery by them
of compress receipts or bills of lading for cotton of equal
value to the amount of money turned over, and to hold
such receipts for the protection of the plaintiff, aver-
ring that defendant breached this agreement by turning
over the money without taking the collaterals and deliv-
ering the same to plaintiff on demand in September,
1901, whereby the said sum of $12,000 was wholly lost
to plaintiff. We think it well to dispose of these 6 counts
preliminarily, as they involve the gist of the action; and
viewing the whole case, including the proofs offered, and
which should have been admitted, we feel no hesitation
in saying that upon no reasonable hypothesis can it be
maintained that the appellant entered into any such en-
gagement as the appellee claims as the basis of his suit,
or that the appellee so thought until after the collapse
of the late concern of Knight, Henry & Co.

The parties were acquainted with the nature of their
own and each other's business. They each knew that
the business of Knight, Henry & Co., was that of buying,
selling, and shipping, and drawing against successive
lots of cotton, and that money used in the course of
business in the purchases would not and could not re-
main in one investment, but would be continually trans-
ferred from one transaction to another during the entire
season. Therefore, when the appellee put money with
the appellant to the credit of Knight, Henry & Co., "to
be used in the purchase of cotton" in the business of the
concern, he could not reasonably have meant or intend-
ed anything else than that the money was to be used at
pleasure in the ordinary conduct of the business, and to
be repaid to him by Knight, Henry & Co., when and on
such terms as had been or might be arranged between

him and them. He made no terms as to any duty or agency of the appellant in these respects, and it assumed none. The appellee's after conduct and that of Knight, Henry & Co., demonstrate that this was the view and understanding of each of them of the transaction, for appellee took from Knight, Henry & Co., and they gave to him a note, dated December 15, 1900 (the day of the deposit), for the amount of the loan, due September, 1901, at 6 per cent. interest, without any reference whatever to any duty, agency, or even knowledge on the part of the appellant as to the matters; and to reduce the affair to an absolute demonstration the appellee says to the manager of his company, in a letter of the 28th of December, 1900 concerning the affair of taking the note for the loan: "You would (on sending note) credit (me) with $12,000, and charge me back with the note, which, of course, would settle the transaction"—and showing further in the same letter an intention to discount the note at any time he wanted to use it. And in a letter of previous date (December 21, 1900) says to the same manager of his company: " Please send me note for $12,000, deposited to our credit, while there (at Decatur), make it payable at bank due at any time up to September 1, 1901, bearing 6 per cent. I request this, because I can take the note, and endorse it and use it, should I need to do so, and not inconvenience our firm in the least." And, the note being given, the appellee afterwards, on August 22, 1901, wrote again to his manager of "our firm," calling attention to a letter of May 24, 1901, and saying: "If you will look at my letter to you on May 24, 1901, you will see that I have fully notified you that I would collect the above note (of $12,000 due September 1, 1901) when due. In order to call your attention to it, I fully underscored the notice and made it imperative, by using the words 'must be paid

when due, both principal and interest.' \* \* \* Mr. Knight, I do not mean to be hard with you; but, under the circumstances, I do not think you should have put yourself in a position to hurt the business to pay off that note (of $12,000), or any other paper when due. I have made other arrangements for my money, and shall expect the note and interest paid when due; in fact, I will need the money." On April 20, 1901, in reply to a letter from plaintiff, defendant wrote to him the following letter: "Decatur, Ala. April 20, 1901. Dear Sir: We are in receipt of your favor of the 18th instant. We are doing all we can to keep the account of Knight, Henry & Co., covered by a sufficient amount of compress cotton receipts and bills of lading, including the amount deposited by you to the credit of Knight, Henry & Co., and, while we do not hold enough to cover the entire account at present prices of cotton, we are assured by Mr. Knight that, with the money due the concern from New York and other places, he has assets of the company sufficient to cover everything. We have just had a talk with him, and can see no reason for uneasiness, but have insisted that he deposit receipts or bills of lading sufficient to cover everything. This is all we can do, and will continue to insist that receipts be deposited to cover everything. Will you kindly send me copy of memorandum on your deposit slip. Yours truly, W. W. Littlejohn, Cashier."

Here, now, is the construction clear, beyond mistake, that the plaintiff put upon the deposit slip sued on in this case. Here is the construction put upon it by Knight, Henry & Co., with plaintiff's knowledge, consent, and recognition. Here is the construction put upon it by the defendant, with notice to plaintiff of that construction, and no recognition thereof, but a continuance of business for six months under that construction.

[First National Bank of Decatur v. Henry.]

And that construction in each instances, known to all and acquiesced in and acted on by all, was and is that the deposit of $12,000 was absolute to the credit of Knight, Henry & Co., on the 15th of December, 1900, and that the keeping of the account good by collaterals was wholly a matter between Knight, Henry & Co., and the plaintiff, and that the defendant was only to receive collaterals as they might be brought in for the account. Not only is this the construction put upon the transaction ante litem motam, when there was no motive other than to conform to the truth, but we will now show that it would have been unreasonable for the plaintiff to have expected the defendant to make, the contract he now insists on, and, beyond this, that such a contract would have been ultra vires so far as the defendant is concerned.

Taking it, first, on the part of the defendant; would or could any reasonable cashier undertake for his national bank to receive $12,000 from the appellee and dole it out to the plaintiff's own corporation, as called for, on time of payment and terms of interest to be agreed on by the defendant as his agent, on collaterals to be deposited to cover the same, which were subject to violent fluctuations in value, and to renew these transactions constantly from December 15, 1900, to September 1, 1901, the limit of credit given by the plaintiff to the corporation in the note for the $12,000, without profit or the chance of profit to the bank, but with great risk from possible fluctuations in the price of cotton, which sometimes varies to the extent of more than a half cent per pound in a day? It seems clear to us that the answer must be in the negative. Yet that is precisely the contract sued on. Then, as to the plaintiff, who is evidently a business man; would it have been other than irrational in him to suppose the defendant would or could udertake such a business, or for him, being willing to

lend his money to his own corporation for business purposes, but requiring ample security therefor, to place it to the credit of the corporation with the bank it was doing business with, without previously having an agreement with his corporation as to the terms, time, and conditions of the loan, and without any precise terms as to time and interest upon which the money was to be allowed to be checked out and without at least a contract of agency about which there could be no controversy? Being president of his own corporation, why could he not make his own contract? Why should he want or expect an unpaid agent, defendant bank, to undertake this business for him? No business man, it may be safely assumed, would have made such a contract as the plaintiff now asserts he made; and the truth is he never made it and it is unreasonable, from the inherent improbability of the thing, and from the acts of all the parties with the plaintiff's asquiescence, and more particularly from the repeated and plain acts of the plaintiff himself, to suppose for a moment that he ever believed that he had made any such contract. Would he, or could he, if he had any thought that he had left $12,000 with defendant to lend to his own corporation, at its discretion as to time and interest, and on securities to be passed upon by defendant from time to time, and to be renewed and reloaned on new securities as cotton was sold, or to be held indefinitely on the same cotton receipts, have gone to his corporation, and, without any notice whatever to defendant for nearly a year taken its note, due nine months thereafter, on 6 per cent. interest, and have written to his corporation: You will credit me with $12,000 deposited by me on 15th December to the credit of our firm when I was in Decatur and charge the note to me, "which, of course, would (will) settle the transaction?" Is it to be suppos-

ed that plaintiff, when writing these letters, and taking this note, and insisted on its payment when it should fall due, though he had an outstanding agency with the defendant to lend this same money to the same party on collaterals ample to cover the short loans and each renewal as cotton was sold? What anxiety would the plaintiff have about his concern paying the debt at maturity, if the defendant was to be liable unless it could turn over at any time, on demand of the plaintiff, warehouse or compress receipts ample to cover the debt?

If the plaintiff had originally intended to make the contract as he now insists he did make it, viz., to leave his money with defendant, to be advanced from time to time by defendant for his account to his corporation on collaterals to be approved and valued by defendant as his agent, and to renew these transactions as cotton was sold during the season, it is clear that he took the matter in his own hands when he took the corporation note at nine months for his money at interest for the whole period, and made no allowance for the time the money might be idle in defendant's hands before the advance on collatterals, and for the time it might be idle on repayment of the loans and before another could be made on satisfactory terms, of which defendant was to be the sole judge. If plaintiff conceived he had such an agency with defendant, is it not unreasonable that he would have neglected to notify the defendant of his having taken the matter in his own hands? And the fact that he gave no such notice shows that the present impression of the nature of the transaction with defendant is entirely an afterthought, having for its purpose the saddling of his own losses in trade on the defendant.

We now turn to the writing itself for the purpose of showing that it is one of such doubtful construction as to make the practical construction put upon it by all

[First National Bank of Decatur v. Henry.]

the parties concerned controlling, especially in view of the unreasonable supposition, from the nature of the dealings, that either party could have intended to contract as now is insisted by the appellee. The writing is an ordinary deposit slip, made and intended as a mere receipt from a bank to its customer, given in the absence of the pass book. It is a copy, necessarily, in its main feature, of the bank entry which the bank makes of the deposit. The initial words are: "First National Bank. Deposited by Knight, Henry & Co., Decatur, Ala., 12-15, 1900, by A. G. Henry, $12,000." Let us construe this in the light of its words, its grammar, the course of business and the after conduct of the parties. Who made the deposit? Knight, Henry & Co. By whom was it made? A. G. Henry. What does a deposit such as this mean? That the money deposited is the property of the receiving bank, but is subject to unconditional check by the depositor. This is the grammar, and this is the business understanding, of the acts recited.—*Craigie v. Hadley*, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9; *Burton v. United State*, 196 U. S. 301, 25 Sup. Ct. 243, 49 L. Ed. 482; *Bank of Republic v. Millard*, 10 Wall. 152, 19 L. Ed. 897. Now, how did the parties view it, and how did they act in reference to it? Plaintiff took an unconditional note from Knight, Henry & Co., for the money due September 1, 1901, and Knight, Henry & Co., checked against the money as they chose, and the defendant paid the checks, thus showing that each party put the same construction on the transaction indicated by the words of the paper. They all understood that the money belonged to Knight, Henry & Co., that the note given for this money belonged to the plaintiff, and that the defendant bank was the custodian of the money for Knight, Henry & Co.

Now we come to the memorandum at the foot of the deposit slip. Its words are: "To be protected for benefit of A. G. Henry by compress receipts or bills of lading sufficient to cover above amount, said receipts to be deposited with the Bank by Knight, Henry & Co., in like manner as other acts. W. W. Littlejohn, Cashier." Does this necessarily mean that the bank was the mere custodian of the money for Henry, but with authority to let Knight, Henry & Co., have it from time to time, and for such time as the bank might insist on, upon collaterals to be accepted and valued by the bank, and to collect the money as the cotton was sold and shipped out, and to renew the transactions of loan and security and collection for an indefinite time? We think not. And such a construction should not be given it if it is capable of any other meaning, for that construction would undoubtedly contradict the previous and main clause, reciting the act which this clause, it is contended, qualifies. The first clauses states, not "that Henry has deposited," but "that Knight, Henry & Co., have deposited," for their account $12,000, and Henry is only mentioned as the person by whose hand the money was deposited. "Deposited," on a bank deposit slip, means passed to the credit of the depositor, giving him the right to check at discretion. The different clauses of an instrument must be construed together as a whole, so as to give each a sensible meaning, and the minor term should never be held to so control the main clause as to make it nugatory, and especially so when to give it such control it must itself take on a construction calling for unusual, unreasonable, and ultra vires engagements, contradicting unequivocally the practical construction put upon the engagement by the parties themselves. By the main clause the money passed from A. G. Henry to Knight, Henry & Co., and the bank was the custodian

thereof for the latter, without any control whatever over it.

What, then, does this writing at the bottom of the slip mean? It does not in terms say that the bank is to do any act, or exercise any discretion, or assume any risk. It does not say the money is to be loaned. The first clause evinces the fact of the consummated loan, and the opening words of this clause, "to be protected," refer to a status already fixed, and not to one to be assumed, by a future loan, or repeated future loans. There was no need of "protection" as the money stood, if it was held by the bank for Henry. But, if passed already to Knight, Henry & Co., it became at once a debt to Henry, and in that shape would or might need "protection." The very words of the minor clause, then, confirm, instead of contradict, the clause, by dealing with the status given to the money by the first clause. Henry. then, has himself made the money Knight, Henry & Co's. It is no longer to be loaned. It is already loaned, and is "to be protected." By whom it is to be protected? By "Knight, Henry & Co." The money already being Knight, Henry & Co.'s and the bank merely the custodian, the words, "To be protected  *  *  *  by Knight, Henry & Co., for the benefit of A. G. Henry, by compress receipts or  bills of lading  sufficient  to cover  above amount, said receipts to be deposited with the bank," seem necessarily to refer to some engagement, already made, or certainly to one to be made, with Knight, Henry & Co., by A. G. Henry, and, certainly, not to import any contract on the part of the bank beyond receiving such collaterals as might be deposited by that company.

And this is not only the only reasonable construction to be put on the words, but, as we have seen, is the identical construction acted on and put upon the paper by every party interested in it. The plaintiff immediately

[First National Bank of Decatur v. Henry.]

took an unconditional note for the whole amount, with interest for the whole period of credit, from Knight, Henry & Co., for money put "to the credit of our firm"; not to be put, or conditionally to be loaned, but a loan already consummated, and looked to them to pay it, and collected it in part; and the defendant, in April, 1901, writing to plaintiff, told him how the account of "our firm" stood, and gave him notice that all he could do was to ask Mr. Knight to keep a full line of collaterals to cover the account with the bank. And so the matter went on, cotton continually and heavily declining, until the failure in September, 1901, when it occurs to plaintiff that the defendant was his gratuitous agent to lend out his money at its discretion to his own corporation on collaterals and to collect and renew such loans on new collaterals, always to be sufficient, no matter what turn there might be in the cotton market, to cover said $12,-000 and interest.

We have seen that the words of the slip do not require, and that the conduct of the parties contradict, any such construction, and that the plaintiff's conduct is in irreconcilable antagonism with that view. If he did not make the money Knight, Henry & Co.'s when the deposit slip was taken, he made it theirs absolutely when he took their negotiable note therefor, bearing interest for the whole period of the credit. There can be no obligation in law to pay for money which still is the property of the lender, nor to pay interest on money not borrowed. The practical construction put by parties on an engagement is controlling of its meaning when there is any sort of doubt, and must often prevail over its literal meaning.— *Lowber v. Bangs,* 2 Wall. 737, 17 L. Ed. 768; *Chicago v. Sheldon,* 9 Wall. 54, 19 L. Ed. 594; *Steinback v. Stewart,* 11 Wall. 576, 20 L. Ed. 56; *Insurance Co. v. Dutcher,* 95 U. S. 273, 24 L. Ed. 410; *Topliff v. Topliff,* 122 U. S.

131, 7 Sup. Ct. 1057, 30 L. Ed. 1110; *District of Colum-
bia v. Gallaher,* 124 U. S. 510, 8 Sup. Ct. 585, 31 L. Ed.
526; *Knox Co. v. Ninth N. Bank,* 147 U. S. 99, 13 Sup. Ct.
267, 37 L. Ed. 93; *Robinson v. Bullock,* 58 Ala. 623;
*Comer v. Bankhead,* 70 Ala. 136.

But cumulative of this is the estoppel against the
plaintiff, after taking the matter in his own hands and
transferring the money absolutely to Knight, Henry &
Co. by taking their negotiable note for the same, to insist,
even if the original transaction warranted it, that the
money in the hands of defendant was any longer his
conditionally or otherwise. If the defendant had under-
stood the contract as plaintiff contends, and had loaned
the money to Knight, Henry & Co. on their notes for
30 or 60 days, secured by ample collaterals, and the
plaintiff had before payment gone to Knight, Henry &
Co. and taken their note for the money for 9 months at
6 per cent. interest, without any agreement or reference
to the dealings with defendant and the collaterals held
by them, is it not clear that the notes given to defendant
would thereby be superseded and canceled, and that the
collaterals held for their payment, without some express
agreement for their transfer as security for the new note
taken by the plaintiff, would revert and belong to
Knight, Henry & Co.? Plainly so. The plaintiff, to
complain of a turning over of the collaterals in that case,
would have to say: "I left $12,000 with you to lend on
collaterals to Knight, Henry & Co. You did so. I aft-
erwards loaned the money myself for nine months to the
same firm, with interest for the whole period, but they
failed, and never paid me; and I now insist that the 12,-
000 was never loaned by me, but remained all the while
under your care for me, and you owe it to me, with in-
terest, because you surrendered the notes and collaterals
you held on my making the loan of nine months. To hold

the defendant liable the plaintiff must demolish the barrier of his dealing with Knight, Henry & Co., to whose rights the defendant yielded. If Knight, Henry & Co., had paid their note, it would hardly be said that plaintiff could make defendant pay the $12,000 left with them. And so, when Knight, Henry & Co., become owners of the money in defendant's hands, the plaintiff has no claim thereto, but must look to Knight, Henry & Co. In other words the defendant, in yielding to Knight, Henry & Co.'s title acquired from plaintiff, are privies of theirs and entitled to the estoppel in their favor, which undoubtedly made the money in the hands of defendant theirs, if the deposit to their credit did not do so in the first instance.—Bigelow on Estoppel, 347; 1 Greenl. Ev. §§ 189, 190. So, then, conceding that the money never became Knight, Henry & Co.'s until they gave their note for it, it seems to us there can be no doubt that the taking of the note amounted to a transfer by the plaintiff of it, and the defendant, having accounted to them, stands in seccession to them, and the estoppel against the plaintiff is absolute.

But it may be urged, and correctly so, that some of the evidence we have proceeded on was excluded as irrelevant and immaterial. When the affirmative charge is given for the plaintiff, it must override all the proof legally before the court, and also that was illegally excluded. In other words, the exclusion of legal evidence competent to influence the issue against the affirmative charge is incurable error. We have considered the case under the influence of the proofs recited to show the pertinency of the evidence which was excluded. When the plaintiff founds his claim on a contract or writing requiring construction, and especially when the terms are in any respect ambiguous or indefinite, all the circumstances and situation of the parties and all the after con

duct in relation thereto, tending to show their own construction of it, or a novation or satisfaction or discharge in whole or in part, are clearly admissible as evidence. We note some of the errors of the lower court in the exclusion of evidence:

The court erred in excluding the letters of plaintiff to J. W. Knight at Decatur, the manager of Knight, Henry & Co., of the 21st and 29th of December, 1900, in reference to the closing of the transaction of the loan of $12,000, and in excluding the note given by Knight, Henry & Co., to him. If these letters had shown a payment of the indebtedness, they would, of course, have been received; but there is no difference between that and in showing that the plaintiff made a contract of his own with his corporation different entirely from that declared on, and superseding that declared on, if made as alleged.

The court erred in not allowing the witness Littlejohn to answer the question whether plaintiff brought the pass book of Knight, Henry & Co., to defendant with the request to make an entry on it on December 15, 1900, and also in not allowing the said witness to testify as to what knowledge plaintiff had of the credit of the $12,000 on the books of defendant; also in refusing to allow the same witness to state whether the bank knew of the giving of the note by Knight, Henry & Co., to plaintiff; also in not allowing same witness to testify as to the manner of doing business in buying cotton and depositing warehouse receipts therefor. If the plaintiff contracted, as he alleges, it must have been intended that the business was to be conducted after the customary manner, especially as the witness testified it could be done in no other way. Also in refusing to allow the witness to state the value of the receipts kept on hand for Knight, Henry & Co.; also in refusing to allow the wit-

ness to state the indebtedness of Knight, Henry & Co., to defendant on December 15, 1900; also in refusing to allow the witness to state whether or not it was feasible for the bank to attend to all the matters relating to the cotton business. The nature of the business, and the impossibility of a bank engaging in it, would shed light on the question of the probability of the bank promising to undertake such matters, when the question was whether or not it made such contract. Also, in refusing to allow the witness to state whether the bank could keep the cotton receipts during the season without constantly changing them. This tended to explain the business it is alleged the defendant was to undertake. Also in refusing to allow the defendant to introduce in evidence the agreement under which the collaterals held by the bank were delivered to Bell, the assignee of Knight, Henry & Co. This agreement, notwithstanding all the reservations therein, was competent evidence to show there was no conversion of collaterals by the defendant, if it was chargeable with the duty of taking them. The court erred in not allowing the witness Knight to testify as to the course downward of the cotton market. This might have caused the loss of the plaintiff's money without fault of defendant, though it took ample collaterals at the time. On this evidence being admitted, which is clearly competent, the plaintiff had no right to recover on any of the first six counts.

The other counts are the common counts for money had and received, for money paid, for money lent on account, and the last and twelfth for not paying money on demand left with the defendant for safe-keeping. There is nothing in the record authorizing a recovery on any of these counts. The only transaction shown in the evidence is that of the deposit of the $12,000 by the plaintiff on the 15th of December, 1900, to the credit of Knight,

Henry & Co., and by that the $12,000 was passed by the plaintiff's own act irrevocably to the credit of Knight, Henry & Co.; and the plaintiff, no matter what impression he may have had of that transaction different from the view we have taken of it, again, by like irrevocable act, made the money Knight, Henry & Co.'s when he took their note for principal and interest, due September 1, 1901, and he further confirmed this by holding and demanding payment of the note at maturity and collecting part of it. It is entirely beyond any indulgence allowed by law to permit him, after such well-defined and plain elections to accept Knight, Henry & Co., as his debtor for the money due on their note, to look to the defendant for any responsibility on their part as to the consideration of that note.

There are one or two other points in the case which we will notice. It would seem that nothing could be clearer than that the construction which the plaintiff's contention puts upon the memorandum at the foot of the deposit slip would make the undertaking or contract ultra vires the defendant corporation, if all this had not been superseded and set aside by the plaintiff's own act in subsequently dealing directly with Knight, Henry & Co. The deposit to the credit of Knight, Henry & Co., was, of course, good. It was in the direct line of defendant's business to receive the deposit, and it was confirmed by the note taken by plaintiff from Knight, Henry & Co., and the collection thereon, and demand of payment of the balance. The defendant had this $12,000 to the credit of A. G. Henry, and he was debtor to the defendant in the sum of more than $20,000, and the plaintiff says, in effect, to Cashier Littlejohn, according to plaintiff's version of the matter, "Pass that $12,000 to the credit of Knight, Henry & Co., and I want your bank to become my broker without hire, to let this money out

on loan to Knight, Henry & Co., from time to time, and to collect on sales of cotton, and on successive collec-tions to reloan, until I notify you to cease, but always on ample cotton receipts to cover the same, no matter how the market fluctuates." And thereupon the deposit slip was written and signed. The deposit by Henry's act passed to the credit of Knight, Henry & Co. It can-not be recalled from them. They had nothing to do with this contract between Littlejohn and Henry. That was res inter allios acta as to them; and, besides, imme-diately afterwards Henry, as we have seen, irrevocably confirms the deposit of money to their credit. He to every intent and purpose sells that money to Knight, Henry & Co., for their note and interest thereon due September 1st. And now, leaving out of view plaintiff's subsequent conduct of claiming, holding, and collecting in part the note, and at the same time of having a right to the consideration of that very note, positions as op-posed to each other as the very antipodes, the simple question is: Dil Littlejohn, as cashier, have authority to commit his corporation to this business of "backer to a cotton dealer," and, supposing the directorate had formally given its sanction, whether the law of corpo-rate power is not too plain in that regard for even Mr. Henry to have supposed for a moment that the scheme was not wholly and absolutely ultra vires, and that the contract, in the expressive language of this court in *Ma-chine Co. v. Wilkerson,* 79 Ala. 315, though fortified by the unanimous vote of the directorate, was not "as much a nullity as if made by a married woman (before her emancipation) or a lunatic?"

It is too plain for argument that the cashier had no power to deal for his corporation in this regard, and that the corporation itself, had it formally authorized the contract, as interpreted by the plaintiff, was entirely

without power. And that there is no sort of estoppel in the way of the defense is equally plain. We merely cite the authorities for these obvious principles:—*Machine Co. v. Wilkerson,* 79 Ala. 315; *Chambers v. Falkner,* 65 Ala. 455; *Chewacla Lime Works v. Dismukes,* 87 Ala. 347, 6 South. 122, 5 L. R. A. 100; *California N. B. v. Kennedy,* 167 U. S. 365, 371, 17 Sup. Ct. 831, 42 L. Ed. 198; *Bank of Lyons v. Ocean Bank,* 60 N. Y. 278, 19 Am. Rep. 189; *Tiffany v. Savings Institution,* 85 U. S. 390, 21 L. Ed. 868; *Spyker v. Spence,* 8 Ala. 340; *U. S. v. City Bank of Columbus,* 62 U. S. 356, 16 L. Ed .130; *Logan Co. N. B. v. Townsend,* 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; *Central Trans. Co. v. Pullman P. Car Co.,* 139 U. S. 60, 11 Sup. Ct. 489, 35 L. Ed. 69; *Jacksonville M. P. R. & N. C. Co. v. Hooper,* 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; *McCormack v. Market N. B.,* 165 U. S. 550, 17 Sup. Ct. 433, 41 L. Ed. 817; *Union Pac. R. v. Chicago, etc.,* 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; *First Nat. Bank v. Hawkins,* 174 U. S. 374, 19 Sup. Ct. 739, 43 L. Ed. 1007; *First Nat. Bank v. National Ex. Bank,* 92 U. S. 122, 23 L. Ed. 679. If the defense of ultra vires was necessary, it was good as to all the special counts proceeding on the alleged engagement of the defendant to act as plaintiff's agent or broker in lending his money, and there is no evidence, as we have heretofore shown, in the record to support any of the other counts. But we have shown above that the plaintiff himself took the transaction into his own hands and superseded the supposed contract with the defendant by making a loan of the money on the note of Knight, Henry & Co., due September 1, 1901, to which he must look for payment.

There are other interesting and important points which are ably discussed by counsel, but this opinion has already proceeded to such a length that we will only

[Scott & Sons v. Rawls & Rawls.]

notice for a moment an additional one. The plaintiff owed the defendant on December 15, 1900, $20,000 or more, in overdrafts of his firm. That account was continued with the new concern, call it firm or corporation, and this $12,000 in dispute in this case balanced off that much of that debit, and the balance of the account was finally paid by the assignee, Bell. The plaintiff claims that the $12,000 was wrongly credited and wants it back. The defendant insists that, if that credit is taken off the indebtedness due it by the original firm of Knight, Henry & Co., it will owe the same amount, and plaintiff, as a partner, would be liable for it, an undertook to set up that debt against him as a set-off or recoupment against his demand. No demurrer to these pleas was interposed, and issue was taken upon them; but the defendant was refused the right to prove them. It is clear that such evidence should have been received. Furthermore, independent of these pleas, this evidence should have been admitted under the general issue since the matter is one of recoupment.—*Grisham v. Bodman,* 111 Ala. 194, 20 South. 514.

SIMPSON and DENSON, JJ., concur with TYSON, J.